LEE, J.
That a warrant for a forcible or unlawful entry upon lands and tenements and turning another out of possession, or for unlawfully and against his consent withholding possession from the party entitled, under our statute, is a civil action, which, by virtue of the act of the 28th of March 1843, may be removed to the Circuit court, on motion without notice, after it shall have remained undecided in the County court for the period of one year or upwards, has been decided by this court, after full argument during the present term, in the case of Harrison v. Middleton, supra 527. I refer to the opinion delivered by Judge Moncure in that case, for a very full and (to me) satisfactory exposition of the reasons which conduced to that conclusion.
By the provisions of the act referred to, any two justices of the peace of the county may meet at the court-house, and form a court for the trial of such a *warrant; when so met and a court is so constituted, it is declared to be a court of record, with power to issue all proper process to bring before them witnesses or other persons whose attendance may be lawfully required by them; and to adjourn from day to day and from time to time till the trial is ended. The sheriff of the county is required to attend upon the justices constituting it, and to execute their orders. The clerk of the County or Corporation court is also to attend them, to record their proceedings and file away the papers exhibited. A jury is to be impaneled and charged in the manner prescribed by the act; the justices are to suffer the parties to be heard by counsel; to admit all legal evidence offered on either side; to decide all questions of law properly submitted to them; to admit bills of exceptions to their opinions; and in all respects conduct the trial according to the usages of courts of law within this commonwealth. When a verdict has been rendered, the court is to render judgment upon it in favor of the plaintiff or the defendant, according to the nature of the finding ; or it ma3' for proper cause set it aside, and grant a new trial, as in other civil causes (Sess. Acts, 1825-6, p. 26, § 3) ; in which latter case,the cause is to be continued to the regular term of the County or Corporation court, and the new trial is to be had therein. The judgment of the jrtstices so rendered is to be regarded as a judgment of the court of the county, and is to be in all respects executed in the same manner as if it had been the judgment of such court at an ordinary term; and either party thinking himself aggrieved, may have the same remedy, by writ of ^rror or supersedeas, as if it had been the judgment of such court: and if it be reversed, the cause is to be remanded to such court, where necessary. I think it clear, therefore, that a court so constituted is to be regarded as a special County court for the trial of the *particular cause ; and that when two or more justices meet and form such a court, the case is to be regarded for the purpose of the act above referred to, and all other legal purposes, as pending in the County court; and that after the expiration of one year from that time, if it remain undecided, it may be removed to the Circuit court, according to the provisions of that act.
I think the objection which has been urged on the part of the defendants to the warrant is without any valid foundation. The complaint made and verified by the party under oath, may be looked to in aid of the warrant; and taking them in connection, they may be fairly construed as being for an unlawful entry and turning the plaintiff out of possession of the tenement in controversy, and unlawfully holding the plaintiff out of possession at the institution of the suit. The withholding of the possession by the defendant at the emanation of the warrant, was a fact as important to be found by the jury as that of the original turning out, to entitle the plaintiff to a recovery. I think the motion to quash was properly overruled.
The plaintiff’s motion to exclude all the documentary testimony offered by the defendant, came at a late period, not having been made until all the evidence had been given, and after the opening argument for the plaintiff had been concluded and that of one of the defendant’s counsel about closed; but if the motion is to be treated as a motion to instruct the jury to disregard the evidence, and in that view deemed admissible when made, and waiving the question whether the grant to Gibson and the conveyance from Baing to Stephenson being referred to in the deed from Stephenson to the ancestor of the defendants, as instruments of title under which, together with the title bond from Baing and the deed from Stephenson, the defendants claimed, might not properly have been given in evidence alona: with the title bond and deed, *for the purpose of proving such a possession under an honest and bona fide claim of title as might ripen their claim, however defective originally, into a perfect title, still, for the purpose of proving such a possession and thus making out a bar under the statute, the title bond and deed from Stephenson were legitimate and proper testimony, though the defendants *294 did fail to connect themselves with the grant to Gibson; and as the motion was to exclude all the documentary evidence of the defendant, it was too broad. Nor was the court bound to discriminate between the different documents offered; but might properly, as it did, overrule the motion for want of a proper designation by the plaintiff of the particular instruments of evidence which ought to have been excluded.
Of the first instruction given to the jury, complaint is made that its meaning is obscure ; and that however understood, it states the law incorrectly. The instruction is perhaps somewhat deficient in perspicuity ; but if it be examined with some little care and attention, I think its meaning will be sufficiently' apparent. Nor is there any such obscurity about it as would render it unintelligible to a jury of ordinary intelligence. It in effect asserts the following propositions: That if the instruments of title under which the plaintiff and the defendants claimed, respectively, embraced the land in controversy; and if the plaintiff and those under whom he claimed had entered upon and taken actual possession of that part of the land embraced within their boundary outside of the interlock with the defendants’ boundary; and if the ancestor of the defendants, under his deed, entered upon the land in controversy (that is, upon the part within the interlock), claiming it as his own, the same being embraced by his deed, and took and held actual adversary' possession thereof by residence, improvement, cultivation or other open, notorious and habitual *acts of ownership, coextensive with the limits of the interlock, the land within the same having continued to be forest and in a state of nature, until so entered upon and taken possession of by the defendants’ ancestor, such entry and possession of the latter operated a disseizin of those under whom the plaintiff claimed, to the extent of the interlock, although the ancestor of the defendants may not have actually inclosed and cultivated the whole of the land in controversy. And that if he continued in possession uninterruptedly, for five years or upwards, and died so in possession, upon his death a descent was cast upon the defendants, his heirs, which would toll the entry of those so disseized; and that if the defendants continued to hold such possession uninterruptedly from the death of their ancestor until the institution of this suit, the plaintiff could not maintain his action. So understood, I cannot perceive any well founded objection to the instruction. It presupposes an ouster by the defendants’ ancestor of the plaintiff to the whole extent of the premises in controversy, the land embraced by the interlock; and affirms that the adversary possession which constitutes it must not of necessity be evidenced by actual inclosure and cultivation, but may be by other open, notorious and habitual acts of ownership, sufficient to amount to actual possession. That such possession may be in this mode is sufficiently established by the cases of Taylor v. Burnsides, 1 Gratt. 165, and Overton v. Davisson, Ibid. 211; and is also supported by the authority of the cases of Ellicott v. Pearl, 10 Peters’ R. 412; and Ewing’s lessee v. Burnett, 11 Peters’ R. 41. That the premises in controversy' were embraced by both of the conflicting claims, and that possession had been taken by those under whom the plaintiff claimed, of that part of the land claimed by them without the limits of the interlock, would not render actual in closure or fencing in, *and actual cultivation, indispensable to enable the defendants or their ancestor to acquire possession of the land within the interlock. For this purpose the exercise of acts of ownership, if they were of the character contemplated by the law as sufficiently importing use, occupation and enjoyment, would suffice: and the possession w’hich they would confer would be of a part or the whole, according as they were restricted to a part, or coextensive with the entire limits of the interlock.
It is supposed, however, that the instruction was intended to present the question raised in the case of Overton v. Davisson, ubi supra, and upon which the opinions of the judges then constituting the court, were so much divided, as to the effect of an actual occupation by a junior patentee of part of an interlock upon the claim of another under an elder and conflicting grant, the latter having previously taken possession of that portion of the land within his boundary outside the interlock. But however that may be, the bill of exceptions as taken, does not present the question. It must be construed as supposing a possession of the whole land within the interlock. Whether it might have been raised upon the evidence in the cause, is immaterial. The instructions asked for by the defendants, and which the court declined to give, are not made part of the record; and in the instructions which the court gave in lieu of them, no opinion is expressed on the point.
The second and third instructions given by the court, have only been questioned, because they refer to the time and manner of taking and holding possession supposed in the first instruction, the expression of which therein is supposed to be elliptical and obscure or repugnant and contradictory in the terms employed. I have already said there is no well founded objection to the first instruction, nor any serious difficulty in ^'understanding its proper meaning. That if the defendants were infants at the time of the acts done by their father, they could not be responsible for those acts in this form, as stated in the second instruction; arid if at the time of the conveyance to the plaintiff, the anees tor of the defendants held the land in controversy' in actual adverse possession under his claim, and continued to hold the same until his death, and such possession was after his death, continued by the defend *295 ants, and never abandoned by them, that such conveyance to the plaintiff was inoperative and ineffectual to pass title to the premises so held in such adversary possession, are propositions too plain to admit of doubt or discussion.
We come next to the instructions asked for by the plaintiff, and which the court refused to give.
With regard to the first of the series, it is only necessary to say that it must be understood as declaring to the jury that possession taken by those under whom the plaintiff claimed, of the premises in controversy, and continued for seven years, would be in the year 1831, or subsequently, a bar to any right of entry on the part of the defendants or their ancestor, or any other person claiming under the Gibson grant; whereas in the year 1831 and until the passage of the act of March 30th, 1837, no possession short of fifteen years, unaided by a descent cast, would bar the entry of one having right or title to the same: and the court, for this reason, might properly refuse to give the instruction.
The second in the series is also objectionable, first, because if taken in connection with the evidence, as it must be to escape the objection of being a mere abstraction, it assumes that the acts relied upon by the defendants as showing their possession, were occasional or interrupted, and not continued and habitual, a matter of which it was for the jury to judge; and ^'secondly, because it assumes that such acts on the part of the ancestor of the defendants were unaccompanied by any “paper title,” legal or colorable; and declares that possession of the premises couid not be gained without such a paper title embracing the same within its boundary. An entry by one upon land in possession, actual or constructive, of another, in order to operate as an ouster and gain a possession to the party entering, must be accompanied by a claim of title; but it is not indispensable that the claim should be ostensible in the form of a deed or any other writing. The claim, from its nature and character, may be wholly independent of any written evidence. Nor, if the party have a deed or other writing with a specified boundary, is the possession which he may take and hold necessarily restricted to what shall prove to be within the precise boundary. He may take and may hold actual possession of land lying outside his true boundary. Whether he has done so in any particular case, is a question of fact and of intention; and whether the acts referred to in this case amounted to such a possession, or were those of a mere trespasser, was a matter for the determination of the jury.
With regard to the third instruction asked for, I have only to remark that I think it was upon a matter wholly irrelevant to the issue before the jury. Whether the entry had been made and possession held, mistakenly, in consequence of the supposed error in running the line and marking the beech referred to, was a question which perhaps might have been material on the general issue in an action of ejectment, or on the mise joined on the mere right in a writ of right. But it could not have been material in this case. Here the question was whether in point of fact such entry had been made and such possession held, and how long before the institution of the suit; and I cannot perceive how the origin of the defendant’s '^possession could tend to illustrate the plaintiff’s right, or in any manner aid the jury in determining the line by which the defendant’s actual possession was to be bounded.
The fourth instruction asked for by the plaintiff is justly obnoxious to the objection made by him to the first instruction given by the court. The terms in which it is expressed are very vague and indefinite, and the meaning intended is extremely doubtful and obscure. If given, it would have been as likely to confuse the jury as to aid them in their deliberations. But it is otherwise objectionable. It is framed upon the hypothesis that the plaintiff had entered upon and regained possession of the premises in controversy after the entry by the ancestor of the defendants; and there is no proof of such re-entry and regaining of possession. It also assumes as a fact in the cause, that after the plaintiff had thus regained possession the defendants (after the death of their ancestor) had re-entered upon him; and declares such re-entry to be a trespass which might be redressed in this action, if the defendants continued to hold possession, provided it had been brought within three years after they had so regained possession. Now, whether the defendants had entered upon the plaintiff and dispossessed him, was the very gist of the action; and if it had even been stated hypothetically, it would have been no less objectionable, because there was no proof of any such re-entry by the defendants after the death of their ancestor, upon a regained possession of the plaintiff. The only entry that could be imputed to them was the entry made by their ancestor in his life time ; and their possession was precisely the continuation of the possession, whatever it was, that he had at the time of his death in 1839. There was no fresh entry made by them, nor any renewal of an interrupted possession. The instruction also imputes to *an entry upon and inclosure of part of the land in controversy by the plaintiff under his title, the effect of divesting the defendants of the possession of all the uninclosed lands within the interlock, without regard to the intent with which such entry and inclosure were made; whether that were to take possession and oust the defendants of the whole, or only the part entered upon and inclosed; and is on this account also obnoxious to just criticism.
The fifil instruction was a direct appeal to the court to settle a fact deemed material in the cause, the locality of the beginning corner of the Gibson survey. It is true the *296 court might be called on to instruct the jury as to the principles of law which might serve to enable them to determine this point; but it was not for the court to apply those principles to the facts of the case, and point out to the jury the place at which they are to place the corner in question. But if this were even otherwise, it was for the party moving the instruction to designate the point which he contended should be adopted, or those which he thought should be rejected; and not to call upon the court in general terms, to examine the whole case and find out and designate to the jury the point at which the corner in question was to be fixed.
The sixth and last instruction asked for by the plaintiff, in the terms in which it is propounded, presents a mere abstract proposition for the opinion of the court. But if those terms could be aided by taking them in connection with the evidence, then the instruction must be understood as assuming that the evidence proved, that those claiming under one of the grants referred to, had entered and held possession of the premises from 1805 till 1833, and that no possession had been had under the other grant until 1833, matters in respect of which there should be no interference on the part of the court with the province of *the jury. Besides, although possession had been taken under one of the two grants referred to, bearing the same date, and had been held from 1805 till 1833, yet if in the last named year those claiming under the other grant had disseized those previously in possession, . and had continued to hold the premises in uninterrupted adversary possession down to the institution of the suit in June 1849, it by no means followed that the title of those who held the possession prior to 1833, would prevail in this suit. On the contra^, the subsequent adverse possession for sixteen years would be a bar to such title, unless those claiming- it could bring themselves within the exception contained in the act of 1837, or were entitled to recover in a writ of right upon the seizin of their ancestor or predecessor. And we must suppose that the comparison of titles made in the instruction referred to the parties in the pending action ; for if it were intended to apply as between previous claimants, it would have been totally irrelevant.
For these reasons, I think no error was committed by the court in refusing to give either of the instructions asked for by the plaintiff. The remark too which has been made in relation to the third of the series, is equalty applicable to most if not all of the others. The case was not ejectment nor a writ of right, but a statutory proceeding involving merely a question of an unlawful entry and ouster on the part of the defendants within the period of the limitation, and a wrongful detainer of possession at the institution of the suit; though the parties seemed to regard themselves as fully embarked in a trial of titles. It is difficult to perceive how the questions mooted in those instructions could tend to illustrate the matter in issue before the jury. Upon a trial of titles between these parties they might no doubt be proper subjects for discussion ; but however decided in this case, they *would seem to be irrelevant and inconclusive. And though decided erroneously, it should seem the judgment should not on that account be reversed, if we can see from the bill of exceptions that they did not and could not affect the merits of the case before the jury. Hunter v. Jones, 6 Rand. 541. See also Le Bret v. Papillon, 4 East’s R. 502.
Waiving all objections to the form, of the bill of exceptions purporting to set out the facts proved, I think the motion' for a nevr trial was properly overruled upon the merits. The plaintiff wholly fathed to prove any such entry and ouster on the part of the defendants, on the foundation of which alone he could be entitled to recover. The only entry and taking possession proved was that of the defendant’s ancestor, which was certainly not later than 1834; and the possession of the defendants was but the continuation of the possession of their ancestor, which devolved upon them on his death in the year 1839. Whatever might have been the fate of a proper action for the trial of the disputed title between these parties, the plaintiff clearly mistook his remedy in resorting to this proceeding. He has wholly fathed to make out a case upon which he is entitled to recover here; and the attempt to try the title in this form must be wholly ineffectual.
I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Eee, J.
Judgment affirmed.