# WHEELING.

## CORE v. FAUPEL.

Submitted September 15, 1883—Decided May 3, 1884.

1. To constitute such a possession, as will bar the title of the legal owner to land, it must be adverse, actual, visible and exclusive, continuous and under a claim or color of title. If any one of these constituents is wanting, the possession will not effect a bar of the legal title. (p. 243.)

2. Where a purchaser enters into possession of land under an executory contract, which leaves the legal title in his vendor and contemplates a further conveyance of the complete title, his entry will be in subordination to the legal title; and in such case, as also in the case of lessee, trustee and other similar cases where one is in under the owner of the legal title, a privity exists, which precludes the idea of a hostile or tortious possession, that could silently ripen into an adverse possession under the statute of limitations. (p. 243.)

3. The possession of a purchaser under an executory contract is not adverse to his vendor, although he has paid all the purchase-money and used and occupied the land for his exclusive benefit. His contract, being executory and made in contemplation of a further conveyance of the legal title, recognizes the title in his vendor, and his holding will be regarded as in subordination thereto and not adverse. But where the purchaser is in possession under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the 'world including his vendor from whom his title and possession are derived.   (p. 244.)

4. The most usual modes of actual possession is by occupancy, use or enjoyment, residence, cultivation, enclosure and improvement. (p. 244.)

5. Adverse possession in any case, in order to effect an ouster of the owner, must in its nature possess such notoriety, that the owner may be presumed to have notice of it and of its extent. It must be open, visible and exclusive.   (p. 245.)

6. An adverse possession must be continuous and uninterrupted. There can be no constructive possession against the owner. When there is no actual possession, the law ascribes the possession to the owner.   Consequently, if at any time during the statutory period the adverse claimant does not continue in the possession, so that he may be sued as a trespasser, he can not protect his claim by the statute of limitations.   (p. 246.)

7. The principal office of a claim or color of title is to define the boundaries and fix the extent of the adverse holding.   If it is a mere claim of title, the adverse holding will be limited to the actual enclosure of the claimant.   But if it is a deed or other paper-title, and the possession is exclusive, it will be regarded as co-extensive with the boundaries contained in such deed or paper.   The color of title, however, may be good or bad, legal or equitable.   (p. 247.)

The facts of the case are stated in the opinion of the Court.

*R. F. Blair* for plaintiff in error.

*Leonard & Caldwell* for defendant in error.

SNYDER, JUDGE:

Action of ejectment brought by A. S. Core against Catharine Faupel in the circuit court of Doddridge county to recover the possession of a tract of one hundred and forty-four acres of land in said county.   The declaration was filed and

the action commenced at the October rules 1876. Before the trial Elizabeth Scheon, under whom it was alleged the defendant, Faupel, claimed as tenant, was made co-defendant and both defendants pleaded not guilty. At the May term, 1880, the action was tried by jury and a verdict returned for the defendants on which the court entered judgment. During the trial the plaintiff excepted to certain rulings of the court and tendered his bill of exceptions, which is made a part of the record; and to review said rulings the plaintiff has brought the case before this Court.

It appears from the bill of exceptions, that J. H. Dis Debar, in the year 1855, obtained from the commonwealth of Virginia a grant for three thousand three hundred acres of land which, it was agreed on the trial, covered the land in controversy and that both the plaintiff and the defendants claim title under said grant; that the title of the plaintiff is derived as follows: By deed, dated April 23, 1865, and duly recorded May 23, 1865, the said Dis Debar conveyed to M. Edmiston, trustee, among other lands, a tract of one thousand three hundred and sixty acres, part of the aforesaid grant, in trust to secure a bond of twenty thousand dollars due to A. S. Core; that C. J. Stuart as substituted trustee in said trust-deed sold to the plaintiff, Core, under said deed nine hundred and forty-one acres of land, being a portion of said tract of one thousand three hundred and sixty acres; that the title of the defendant, Elizabeth Scheon, is derived as follows: By deed dated February 10, 1865, acknowledged August 30, 1866, and duly recorded November 13, 1866, the said Dis Debar conveyed to John Scheon one hundred and forty-four acres of land, part of said grant of three thousand three hundred acres, and by mesne conveyances the title of said John Scheon to said one hundred and forty-four acres was vested in the said defendant. These being the respective paper-titles of the parties, the plaintiff gave evidence to the jury *tending to prove*, that the deeds under which his title is derived convey the land in dispute; and the defendants introduced evidence *tending to prove* the following facts: That the deeds under which the plaintiff claims do not include the land in dispute; that Frederick Faupel entered upon said land as a tenant of said Dis Debar in the year 1860, under a

lease for six years and continued to reside on it under said
lease for about four years; that in 1864, the said Dis Debar
made a contract for the sale of the one hundred and forty-
four acres in controversy to John Scheon, who paid then
one hundred dollars on the purchase and the remainder of
the contract price, eight hundred and fifty-one dollars, was
not to be paid until October or November, 1866, and that
from the date of said purchase said Frederick Faupel became
the tenant of said John Scheon and so continued to the time
of his death, since which time the defendant, Catharine
Faupel, has been the tenant of said John Scheon and those
claiming under him; that the defendants and those under
whom they claim, have occupied and improved the said land
from the date of said contract of purchase, in 1864, continu-
ously up to the time of the trial of this action.   It is stated
in the bill of exceptions that there was no evidence tending
to prove that either the plaintiff or the trustees in the deeds
under which he claims, had any actual notice of the sale by
Dis Debar to John Scheon until November 13, 1866, when
the deed to the latter was recorded.   The following instruc-
tions to the jury were asked by the defendants and the plain-
tiff respectively :

### DEFENDANTS' INSTRUCTION.

"The jury are instructed that if they believe from the
evidence that the defendants were in possession of the land
in controversy under a claim and color of title adverse to
the plaintiff, and exercising notorious and perpetual own-
ership over the same, such as residence on the land, claiming
the land, &c., more than ten years before the commencement
of this suit, then they must find for the defendant."

### PLAINTIFF'S INSTRUCTIONS.

"If the jury believe from the evidence that the said one
hundred and forty-seven acres of land was conveyed by the
said deeds from Debar to Edmiston, trustee, and from Stewart,
trustee, to the plaintiff, then the plaintiff is entitled to re-
cover the same in this action unless the jury further believe
that the defendants, and those under whom they claim, held
possession of the said one hundred and forty-seven acres of

land for ten years prior to the commencement of this action under title adverse to the said Debar and the plaintiff, *and the possession of the defendants, and those under whom they claim, was not adverse to the title of the plaintiff until the* 13*th day of November,* 1866, *when the deed from Debar to said John Scheon was admitted to record in Doddridge county.*"

The plaintiff objected to the defendants' said instructions and the defendants objected to that of the plaintiff. The court gave that of the defendants to the jury and refused to give the whole of the plaintiff's instructions but gave to the jury that part of it not in italics. To the ruling of the court in giving the defendants' instructions and refusing to give the whole and to giving only part of his instruction the plaintiff excepted. The propriety or the impropriety of these rulings are the.only matters brought to this Court for consideration. These instructions involve the application of the statute of limitations to real estate or, as it is generally called, the doctrine of adversary possession.

The effect of the statute is to render a continued adversary possession for ten years conclusive in the action of ejectment not only against the possession but the title of the true owner. This result is so absolute, that such adversary possession operates as a transfer of the legal title and is not only a sufficient defence on the part of the defendant, but is sufficient ground for the plaintiff to recover the land, to which he has so acquired title, against the strongest proof of better title.

The inexorable operation of the statute, disregarding as it does entirely the original merits of the controversy, furnishes a sufficient reason for excluding mere presumptions of the facts necessary to effect the bar, and for exacting clear and decisive proofs of their existence. When such proofs are furnished, the statute should receive a fair and liberal interpretation.

"When we look to the elements of an adversary possession, in reference to conflicting claims, and the statutory proscriptive bar, we find that it consists of an exclusive, actual, continued possession, under a colorable claim of title"—*Taylor* v. *Burnsides,* 1 Gratt. 165, 190.

The nature of that adverse possession, which is required

to constitute a bar to the assertion of a legal title by the owner of it, or by one against whom the adverse occupant brings ejectment, is defined with singular completeness and accuracy by Justice Duncan in *Hawk* v. *Senseman*, 6 S. & R. 21, where he says, that it must be "an actual, continued, visible, notorious, distinct and hostile possession."

To constitute a possession such as will bar the title of the legal owner under either of the two definitions just given, which are in effect the same, five elements must co-exist. It must be (1) hostile or adverse, (2) actual, (3) visible, notorious and exclusive, (4) continuous and (5) under a claim or color of title.

1. It must be *hostile or adverse.* What constitutes adverse possession and what evidence is sufficient are questions of law; whether, in fact, the possession is adverse, or under the owner's title, is for the jury; and the burden of proving that the possession was adverse, is upon the person alleging it— *Jones* v. *Porter*, 3 Pen. & Watts. 132. If the entry was permissive, it must be proved that the party did some act which would constitute a disseisin or make his holding adverse. Wherever a privity existed between the parties, and the possession was originally taken and held in subserviency to the title of the real owner, a clear, positive and continued disclaimer and disavowal of the title and assertion of an adverse right, brought home to the owner, are indispensable before any foundation can be laid for the operation of the statute— *Cooey* v. *Porter*, 22 W. Va. The occupant's declarations, during the occupancy, are evidence to show that the holding was not adverse— *Calhoun* v. *Cook*, 9 Barr 226. To make out a title by adverse possession, as a general rule, the title must be adverse in its inception; and where the entry is under the title of the legal owner, the holder cannot controvert that title without an express disclaimer, or its equivalent, and the assertion of an adverse title with notice to the owner. And a vendee, who enters under an executory contract, which leaves the legal title where it was and contemplates a future conveyance, enters in subordination to the legal title; and in such case, as also in the case of lessee, mortgagor, trustee, co-tenant and similar cases where one is in under the owner of the legal title, a privity exists which

precludes the idea of a hostile, tortious possession which could silently ripen into a title by adverse possession under the statute of limitations—*Clark* v. *McLure*, 10 Gratt. 305. An adverse possession depends upon the intention with which it was taken or held. Whenever the act itself imports that there is a superior title in another by whose permission and in subserviency to whose still continuing and subsisting title, the entry is made, such entry cannot be adverse to the owner of the legal title.

In conformity with these principles, it is the established law of this State, that the possession of the purchaser of land, under an executory contract, is not adverse to his vendor, although he has paid all the purchase-money and used and occupied the land for his own exclusive benefit. The contract, being executory and made in contemplation of a conveyance by deed, recognizes the legal title as outstanding, and his possession will be treated as in subordination thereto and not as adverse. *Williams* v. *Snidow*, 4 Leigh 14; *Gay* v. *Moffitt*, 2 Bibb 506; *Nowlin* v. *Reynolds*, 25 Gratt. 137. But where the purchaser is in possession under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the world, including his vendor from whom his title and possession are derived. The entry or the holding in such case imparts no recognition of a subsisting title in another, by whose permission and in subordination to whose continuing title the purchaser entered or holds. *The Society for, &c.* v. *Clarke*, 4 Pet. 480; *Bradstreet* v. *Huntington*, 5 *Id.* 402.

2. It must be *actual*. It must be actual as contrasted with constructive possession. There must be, therefore, in all cases an entry in order that an ouster may be effected and and an adverse possession begun. It must be a going upon the land with a palpable intention to claim it as his own by the person entering. To bar the legal title an entry on the land is indispensable. And the intrusion on the land must be accompanied by a claim of right and not the assertion of an outstanding title pre-existing to the land. The principle of the prescriptive bar is to treat him, who has had the absolute dominion and enjoyment of the land, for a given number of years, as the true owner, against all proofs to the con-

trary. It is this absolute dominion and enjoyment which constitutes actual possession; and there can be none other. A man cannot, by mere physical means, retain land in his exclusive grasp. Possession may be more manifest as to a part than as to the rest; therefore, it is an established rule of law that the actual possession of a part is the possession of the entire tract or boundary covered by the occupant's title or claim of title. Thus the true or apparent owner dwelling upon his farm, by himself or his tenant, is as truly in the possession of his woods and waters as he is of his pastures, fields and gardens. What is the extent of his possession is to be determined by the limits of his title or color of title. An intruder without color of title is, of necessity confined to his mere enclosure; there must be limits to his possession and in such case his enclosure is all he can have. *Kincheloe* v. *Tracewell*, 11 Gratt. 587. The most usual and decisive·modes and acts of actual possession are occupation, residence, cultivation, inclosure and improvement.—*Taylor* v. *Burnsides*, 1 Gratt. 165.

3. It must be *visible, notorious and exclusive.* These constitute the qualities which chiefly distinguish a disseisin from a trespass, and they unite to give rise to two modes in which a disseisin may be effected. 1. Where the entry is not under a written title or paper, but merely under a claim of right or ownership, the ouster, as we have seen, extends no further than the enclosure of the disseisor. 2. But, if one enters under a color of title, by deed or other written document, and occupies and improves the land he acquires, in law, actual possession to the extent of the boundaries contained in the writing, and this through the title conveyed to him is good for nothing. To give that effect to his possession of a part of the land, the possession must be exclusive; for if the true owner is in the actual possession of any part of the land the disseisor will be confined to his enclosure or actual possession and he will not be considered as in possession to the boundaries of his deed or writing. In any case, however, the possession to effect an ouster of the owner, must in its nature, possess such notoriety that the owner may be presumed to have notice of it, and of its extent. It must, in fact, be open, visible, notorious and exclusive—*Proprietors,*

*&c.* v. *Call*, 1 Mass. 483; *Pray* v. *Pierce*, 7 *Id.* 381. If two persons are in possession of the same land, one with a good and the other with a bad title, the law ascribes the possession to him who has the right. The test then of the exclusive possession is the existence or non-existence of actual possession. If the owner is in the actual possession of any part of the tract he is in the possession of the whole; and of course the intruder cannot then have the exclusive possession of any part of it, unless by his *pedis possessio* he effects an ouster of the owner and even then his possession will be confined to his actual enclosure from which he has expelled the owner.

4. It must be *continuous*. If the land is of a character to admit of permanent useful improvement, the possession must be kept up during the whole statutory period by actual residence, or by continued cultivation or enclosure. Surveys, cutting wood, occasional occupancy, with payment of taxes, will not do. Where there are several adverse possessions they cannot be tacked together so as to effect a bar or ouster of the title of the owner, unless the several occupants claim in privity and there was no break in the succession of the one to the other. Their possessory estates must be connected and continuous. *Jackson* v. *Thomas*, 16 Johns. 293; *Wade* v. *Lindsay*, 6 Metc. 407; *Winslow* v. *Newell*, 19 Vt. 164, 169. Upon every discontinuance of the possession of the wrong-doer, the possession of the rightful owner is, by operation of law restored, and nothing short of an actual adverse and continuous possession for the statutory period can destroy his right or vest title in the wrong-doer. *Casey* v. *Inloes*, 1 Gill 430; *McIntire* v. *Brown*, 28 Ind. 347. It is not sufficient for the wrong-doer to show an act of adverse possession at a point more than ten years prior to the bringing of the action against him. He must show that such adverse possession has been continued, consecutive and unbroken for the statutory period. It is something done by him not merely that which is left undone by the owner that is to be considered. There can be no constructive adverse possession against the owner, when there is no actual possession which he could treat as a trespass and bring an action for; unless the adverse claimant is so in possession of the land that he may at any time be sued as trespasser the statute

will not run in his favor; and although he may have taken actual possession, if he does not continue there so that he may be sued at any time as a trespasser during the prescriptive bar, he cannot rely on the statute of limitations. Tyler on Eject. & A. E. 808; *Hill* v. *Saunders*, 6 Rich. 62; *Steedman* v. *Hilliard*, 3 *Id.* 101. The moment the premises became vacant, that moment the owner, by reason of his legal title, will be regarded in the constructive possession, and the adverse possession of the wrong-doer at an end. It is, therefore, absolutely necessary that the adverse occupancy shall be *continuous*, open, visible and exclusive in order to effect a bar of the title of the true owner. Tyler on Eject. p. 908; *Trotter* v. *Cassady*, 3 Marsh. 366.

5. It must be under a *claim or color of title*. What has already been said incidentally in the preceding discussion sufficiently describes the character and necessity of claim or color of title in the adverse holder. The principal office of a claim or color of title is to define the boundaries and describe the extent of the adverse holding. If it is a mere claim—that is a mere assertion of right without any paper title—the adverse holding will be limited to the actual enclosure of the claimant—*Kincheloe* v. *Tracewells*, 11 Gratt. 587. But, if it is founded on a deed or other documentary title the holding will be treated as co-extensive with the boundaries contained in such deed or document, provided the possession of the adverse claimant is exclusive.

It has been asserted that a deed void on its face or disclosing facts which show that the person from whom it is acquired had no title, cannot form the basis of an adverse possession—*Moore* v. *Brown*, 11 How. 424; *Simmons* v. *Lane*, 25 Ga. 178; *Marsh* v. *Wier*, 21 Tex. 97. As to the correctness of this position no opinion is here expressed, as it is not required by this case; but the courts have concurred, it is believed without exception, (certainly such is the law in Virginia and this State,) that any paper which has the appearance of a title, although it is not in fact such, may be a color of title. It has been decided by our courts to be "a good or bad, a legal or an equitable title"—*Adams* v. *Alkire*, 20 W. Va. 480; *Shanks* v. *Lancaster*, 5 Gratt. 110. The authorities seem to be conclusive, that a claim to land, under a con-

veyance, however inadequate to carry the true title to such land, and however incompetent might have been the power of the grantor in such conveyance to pass the title to the subject thereof, yet a claim asserted under the provisions of such deed is strictly under a color of title, and one which will draw to the possession of the grantor the protection of the statute of limitations, other requisites of those statutes being complied with. The question of what is color of title is a matter of law and when the facts exhibiting the title are shown, the court must determine whether they amount to color of title. But good faith in the party, claiming under such color, is a question of fact for the jury—Tyler on Eject-ment, &c. 872–3.

Applying these principles to the case at bar, it is apparent that neither the instruction asked for by the defendants which was given to the jury by the court, nor the one offered by the plaintiff and refused by the court, correctly lays down the law applicable to the character of this action. Here the plaintiff and the defendants claim under titles derived from the same grantor. There could, therefore, have been no adversary possession by the defendants until the legal title was acquired by the vendee of Dis Debar under whom they claim—that is until John Scheon obtained his deed from Dis Debar. Before he obtained his deed Scheon was claiming under a contract or equitable title, which imported an out-standing title in his vendor and showed that he held in sub-ordination to that title and not adverse to it. But after he obtained his deed, then, he was claiming adversely to the whole world including his vendor. The date of the deed is *prima facie* evidence of the date of its delivery, but it is not conclusive. The delivery is the date at which it became operative and not the date of its recordation. The date of the delivery is a question of fact for the jury and not for the court. The plaintiff's instruction, therefore, which fixed the recordation as the time the deed become operative and as the commencement of the defendants' adverse possession, was erroneous.

The defendants' instruction was erroneous because it did not properly define adverse possession. It was especially erroneous, because it omitted the important element of *con-*

*tinuous* adverse possession and that it was *exclusive*. The proper instruction as applied to the evidence in this action would be: "If the jury believe from the evidence that the land in controversy is embraced in and conveyed by the deeds from Dis Debar to Edmiston, trustee, and from Stuart, trustee, to the plaintiff, then they must find for the plaintiff, unless they further believe from the evidence that the defendants and those under whom they claim, have been in the exclusive, actual, continued visible, and notorious possession of the land for more than ten years prior to the commencement of this action claiming the same under claim or color of title adversely to the title of the plaintiff and those under whom his title is derived; and they are, also, instructed that the title of the defendants derived from Dis Debar was not adverse to that of the plaintiff until the deed from Dis Debar to John Scheon, offered in evidence, was delivered by Dis Debar to said Scheon, and from that time it was adverse."

For the errors aforesaid, I am of opinion that the judgment of the circuit court must be reversed with costs to the plaintiff in error, the verdict of the jury set aside and a new trial awarded, the costs of the former trial to abide the result of the action.

REVERSED. REMANDED.