# WHEELING

POINT MOUNTAIN COAL & LUMBER CO. v. HOLLY LUMBER CO.

Submitted January 30, 1912. Decided June 10, 1912.

1 ADVERSE POSSESSION—*Operation and Effect—Mistake—Extent of Possession.*

While the general rule is, that one who by mistake enters lands of another not covered by his title papers will be limited in his adversary possession to the land actually enclosed or of which

he has had the *pedis possessio;* yet, if his title papers do cover the land entered, and the entry be with the purpose and intent of holding the same to the limits of the boundaries described in his deed or title papers, and as surveyed, and located on the ground by natural and fixed objects called for, he may by such entry and adversary possession and color of title, continued openly, notoriously and exclusively for the requisite period acquire title to all the land comprehended in his title papers, although such land may have been located and entered, by mistake as to the true location of original lines and corners called for in some prior or ancient patent, deed or title paper, by which he traces his title to the commonwealth.   (p. 26).

2.   SAME—*Operation and Effect—Settlement of Boundaries.*
One of the objects of the statute of limitations is to settle disputed boundaries, as well as disputed claims of ownership, regardless of what the true boundary or better right may turn out to be.   (p. 26).

3.   SAME—*Operation and Effect—Extent of Possession—"Color of Title."*
Color of title, for the purposes of the statute of limitations as to land, is that which has the semblance or appearance of title, legal or equitable, but which in fact is not title.   (p. 26).

4.   SAME.
The same kind of adversary possession which by *pedis possessio* will ripen into good title to land actually occupied and enclosed under a claim of title, will if under color of title give good title to the occupant to the limits of the boundary covered by his deed or title papers, the boundaries thus called for being in such cases equivalent to actual enclosure and occupancy under claim of title.   (p. 26).

5.   SAME—*Nature and Requisites—Continuity of Possession.*
By section 19, chapter 90, Code 1906, adversary "possession of any part of the land in controversy under such patent, deed or other writing, for which some other person has the better title" is "taken and held to extend to the boundaries embraced or included by such patent, deed or other writing unless the person having the better title shall have actual adverse possession of some part of the land embraced by such patent, deed or other writing"; and the fact that some stranger to the better title, not shown to have entered under or by authority or sufferance of the owner of the better title may have cropped or otherwise used and had enclosed by an indifferent fence or barrier a small portion of the disputed boundary, does not interrupt the operation of the statute of limitations in favor of one in possession of the residue of the disputed boundary, oc-

cupying, and claiming the whole thereof by color of title, or render the possession of the latter less exclusive of the owner of such better title. (p. 28).

6.  LANDLORD AND TENANT—*Landlord's Title—Interruption of Possession.*

   Recognition of title or attornment to another by the tenant of such adversary claimant, will not by section 4, chapter 93, Code 1906, interrupt the continuity of such claimant's possession, but will be void, "unless it be with the consent of the landlord of such tenant, or pursuant to, or in consequence of, the judgment, order, or decree of a court"; or such claimant otherwise have notice or knowledge of such recognition or attornment by his tenant. (p. 32).

7.  SAME.

   If such tenant of an adverse claimant take a secret lease from a third person claiming to be the owner, without the knowledge of his landlord, the character of his possession will not be changed thereby. (p. 33).

Error to Circuit Court, Webster County.

Action by the Point Mountain Coal & Lumber Company against the Holly Lumber Company and others. From a judgment for defendants, plaintiff brings error.

> *Reversed, and New Trial Awarded.*

*Haymond & Fox* and *Linn & Byrne,* for plaintiff in error.

*Morton & Wooddell, J. S. Cogar, W. G. Bennett, Jake Fisher,* and *Hall Bros.,* for defendants in error.

MILLER, JUDGE:

In ejectment plaintiff claims Lot No. 19, of 2000 acres; defendant Lot No. 18, of 3000 acres, of the Pennell chain of surveys, the latter laying immediately Northeast of the former.

One of the questions of fact presented was as to the true location of the original division line between these two lots. Plaintiff's contention was that this line began at a rock and two beeches, thence North 40 degrees west Crossing Back Fork of Elk River at 212 poles, 455 poles to a chestnut. Defendant contended that the line began at a Cucumber, as called for in the original survey and patent, located 150 poles or more Southwest of the rock and two beeches, and thence according to the calls of the original patent North 40 degrees West, with proper vari-

ation, 455 poles to the chestnut called for. The land in controversy covers some 400 acres.

Though not admitting the correctness of the jury's finding, plaintiff concedes that it is probably bound by the verdict, on conflicting evidence, locating the original division line between these lots, as claimed by defendant. But on the question of title by adversary possession it makes no such concession. On the contrary it insists that by such adverse possession under color of title, it has acquired good and indefeasible title to the disputed boundary, entitling it as matter of law to a verdict and judgment; or, if not this, that it was entitled to have the question of fact of such adverse possession submitted to the jury, uninfluenced by and wholly apart from the question of the true location of the original boundary line between the two lots, and not as was done by defendants' instructions, and particularly by its instructions numbered 4 and 5, given on its behalf, confused therewith.

Originating with a decree of partition of lots numbered 12 and 19, made upon the report of commissioners in 1871, it is conceded that this decree and all subsequent deeds down to and including the immediate deed to plaintiff describe said Lot No. 19, as beginning at a large rock and two beeches, and a corner to lot 18, and thence for the division line, North 40 degrees West crossing Back Fork of Elk River at 212 poles, 455 poles to a chestnut, and from thence calling for courses and distances and natural and fixed objects, to the beginning, and thereby definitely and conclusively locating plaintiff's land on the ground substantially as described in the declaration. The evidence, oral and documentary, leaves no room for controversy on this point. Furthermore, the uncontroverted evidence is, that plaintiff and its predecessors in title have persistently, since the decree of partition of 1871, claimed the land within the boundary fixed by that decree, and described in the subsequent deeds, including the disputed boundary, to the exclusion of all other claimants; that in August, 1895, Frederick S. Stevens and others, then owners of the 2000 acres, known as lot No. 19, found one John McClanahan on the land claimed by them and within the boundary or interlock now in controversy; that on that day they sold and conveyed to him by metes and bounds a tract of twenty

acres, more or less, in the Northeast corner of said tract, and within the boundary now in controversy; that on the same day they leased to him two small pieces of said land South of said Back Fork, and within the disputed boundary, one called the Corn lot, of about three acres, the other a triangular piece about the same size, all described as belonging to the Stevens tract, for the term of five years, the lessee covenanting and agreeing, in consideration of the premises, to keep a watch over the entire Stevens tract so called, to keep off trespassers, prevent cutting of timber, and make reports as to boundary lines, &c., to H. G. Thurmond, the lessor's local attorney. The record also shows that on October 4, 1897, McClanahan and wife, for the consideration recited, reconveyed to said Stevens, the land conveyed by the latter and others to him, in 1895, reciting in the deed that at the time of the former conveyance it was supposed this tract conveyed contained about twenty acres, but that it had been found to contain some eighty acres, more or less. After this conveyance McClanahan, as he admits and swears, continued as before to reside on the land and to occupy it as the tenant of plaintiff and its predecessors and was so occupying it at the date of this suit, openly, notoriously, and exclusively, and reporting to the owners and their attorney to the exclusion of all other persons, unless it be a little patch of about a half acre, within the boundary in controversy, enclosed by a part rail, log or brush fence, and sometimes cultivated by one David McClanahan. Under whom or by whose authority or by what claim, if any, David McClanahan so occupied this land is not definitely shown.

Defendants controvert plaintiff's claim of title by adversary possession, on two grounds: First, that the calls in the decree of partition and subsequent deeds relied on, for a rock and two beeches, as the beginning corner, being mistaken for the cucumber called for in the original grant, and from thence, by like mistake, for the other boundaries, and together mistaken for the true boundary lines of said lot No. 19, plaintiff was without color of title to any of the land in controversy; and that as the land actually enclosed and occupied by McClanahan for ten years prior to the suit, was not definitely located on the ground and described and shown to the jury, no recovery thereof could be predicated on mere claim of title, and that the general verdict

for defendant is clearly right: Second, that conceding possession by John McClanahan, under plaintiffs, his possession within the disputed boundary was not exclusive, (a) because David McClanahan, who lived on a portion of defendants' land not within the disputed boundary, for some years had occupied and cultivated a portion of the disputed strip, and who on November 24, 1905, by deed of that date conveyed the land claimed by him, about one hundred acres, together with all possessions and rights of possession owned or claimed by him, etc., to defendant; (b) because, on January 1, 1904, John McClanahan and Charlott, his wife, plaintiff's tenants, accepted from E. A. Beckley, one of the defendants, a lease for part of the 3000 acre tract, and claimed to cover the land then occupied by them under the prior lease from plaintiff, this lease, among other things, reciting: "It is further understood that the possession of the second parties heretofore had of the said 3000 acre Haines tract, or any part thereof has been under and with the consent, sufferance and authority of the said E. A. Beckley and those under whom he holds, and that such possession has been for the use and benefit of said owners of the said tract of land."

Adverse possession by John McClanahan for ten years prior to ouster by defendants, the facts not being controverted, we think, clearly entitled plaintiff, as mater of law, to a verdict and judgment for the land sued for, unless defeated in these rights for the reasons assigned by defendant.

First, among defendants' contentions, did plaintiff and its predecessors have color of title? Defendant answer No, because the location on the ground by the report of the commissioners and the decree of partition of 1871, and the subsequent title papers, was by mistake, the evidence as claimed tending to show intention of the owners to claim only to the true boundary lines of said lot No. 19, and not to the actual boundaries described in said decree and deeds. Plaintiff's counsel do not controvert the general proposition relied on by defendants' counsel, supported as it is by *Heavner* v. *Morgan,* 41 W: Va. 428, *Jackson* v. *Land Association,* 51 W. Va. 482, and *Schaubuch* v. *Dillemuth,* (Va.) 60 S. E. 745, that if one by mistake enter on the lands of another, his title papers not actually covering the land entered, he can not by adverse possession under color of title

acquire title to the land not actually covered by his title papers, but will be limited to the land actually enclosed and of which he has the *pedis possessio.* But they say this proposition has no application to the case in hand, for the reason as they contend, plaintiff's title papers do actually cover the land in controversy, by actual survey and location on the ground, with manifest and fixed purpose and intent on the part of plaintiff and its predecessors to claim the land covered by the decree of partition and subsequent deeds. In the case at bar plaintiff's dwelling house, that occupied by its tenant, is actually on the land in controversy, and so are the enclosed fields, and as if to make no mistake as to plaintiff's intention and purpose, it or its predecessors had the land surveyed, the boundaries marked not only by corner trees and line trees, but by the rivers and other water courses crossed, and by painting the trees along the lines so as to give notice of their claim on the ground; and although we concede the fact to be that boundaries thus described and called for in deeds and other title papers may have been made by mistaking them for original lines and corners the statute of limitations is not thereby robbed of its efficacy, and a claimant of the land by color of title and possession defeated of his rights acquired by such adversary possession. Where land is thus held in adverse possession for the requisite period, although it be under a mistake as to the true location of the lines the statute operates to give good title and to bar the rights of the original owner. *Teass* v. *St. Albans,* 38 W. Va. 1, 13, citing Buswell on Adverse Possession, section 250; *Burrell* v. *Burrell,* 11 Mass. 294; *Brown* v. *McKinney,* 9 Watts 567; *Clark* v. *Tabor,* 28 Vt. 222; *Robinson* v. *Phillips,* 65 Barb. 418, and *Alexander* v. *Wheeler,* 69 Ala. 332. In the principal case, at same page. Judge HOLT says: "It is one of the objects of the statute to settle disputed boundaries, as well as disputed claims of ownership, regardless of what the true boundary, or better right, may turn out to be." And where one is in possession under a deed or other instrument purporting to convey title, however defective, and whether in good or bad faith, he has color of title, entitling him if continued for the statutory period, to hold the land as against the true and real owner or recover it from him, if after ouster by the latter he has by adverse possession ripened his bad

title into a good one, to recover it by suit in ejectment, to the extent of the boundaries in his deed or title paper. As many times decided by this and other courts, color of title for the purposes of adverse possession under the statute of limitations as to land, is that which has the semblance or appearance of title, legal or equitable, but which in fact is no title. *Core* v. *Faupel,* 24 W. Va. 247; *Adams* v. *Alkire,* 20 W. Va. 480; *Swann* v. *Thayer,* 36 W. Va. 46, and many cases collated in 1 Ency. Dig. Va. & W. Va. Reports, 206, *et seq.* And the same kind of adverse possession, which by *pedis possessio* will ripen into good title to land actually occupied and enclosed under a mere claim of title, will give good title to the occupant under color of title to the entire boundary covered by his deed or title papers, the boundaries in the deed in such cases being equivalent to actual inclosure under a claim of title. See cases already cited. And if the occupant intends to claim the land the fact that such possession originated in a mistake as to the true boundary of some prior grant or title paper, will not prevent the running of the statute. *Rudolph* v. *Peters,* 22 Am. & Eng. Anno. Cases. 446, and note 450. Plaintiff certainly proved color of title.

But was the continuity of plaintiff's adverse possession by John McClanahan broken, or rendered inoperative by the alleged possession of David McClanahan, or by John McClanahan, under the lease of January 1, 1904?

First, as to the possession by David McClanahan. He did not live on the disputed boundary. The only land claimed to have been occupied by him in any way within the disputed boundary was about half an acre, which appears to have been enclosed by an indifferent fence or barrier. Defendants' witness says he had it enclosed by "some rails on the lower side of it, and I think some logs on the upper side of it. It was a fence sufficient to hold his stuff there." Other witnesses for defendant say this patch was so enclosed and that they saw crops in this patch some years. It does not very distinctly appear who built the fence, nor that David McClanahan originally made the improvement, nor that it was he who cropped the place. And it certainly does not appear under whom, if ever, he made entry in 1895, when the evidence tends to show it was first noticed.

The deed from David McClanahan and wife to Beckley of November 24, 1905, one of the deeds offered in evidence by defendant, describes the tract of one hundred acres more or less as the same conveyed to McClanahan by C. P. Dorr and wife, January 21, 1891, but we do not understand from the evidence this land to be identified as any part of the disputed boundary, or as covering the small entry or enclosure referred to. Nor does this deed from McClanahan to Beckley purport to convey any other land, unless it be by another clause, which undertakes to grant all rights of possession owned or claimed by McClanahan "in and to what is known as the Sheffy tract, the Haynes tract, the Goff tract and any and all of the tracts of land owned or claimed by the said E. A. Beckley on Back Fork of Elk River or it's tributaries." No other reference to right of title or possession in David McClanahan to this small piece within the disputed land is made in this or any other title paper. Nor does it otherwise appear under whom or by what authority David McClanahan cropped or occupied the land, or that his possession or occupancy was open, notorious and exclusive of others. Certainly it nowhere appears that David McClanahan occupied the land, under defendant or any one under whom it claims, prior to his deed to Beckley. John McClanahan who occupied the land some twenty-five or thirty years, and who in August, 1895, took a deed for the twenty acres referred to, from Frederick S. Stevens, on that day by lease in writing became lessee of Stevens of other lands within the disputed boundary and agreed to hold, watch and care for the residue of the tract, and to ward off all trespassers thereon, so that at the date of the deed from David McClanahan to Beckley in November, 1905, unless the former's possession of the small patch defeated it, John McClanahan's possession for plaintiff and its predecessors had matured into good title  But upon what principle can David McClanahan's possession of the small lot defeat the operation of the statute of limitations under John McClanahan's possession? As already noted it is not clear that he occupied and cultivated the land every year. Indeed the evidence is very uncertain about this; but how did he occupy the land and whose tenant was he? For aught that appears he may have been tenant at will or sufferance of plaintiff or some one under it; or he

may have been a mere trespasser. By section 19, chapter 90, Code 1906, adversary "possession of any part of the land in controversy under such patent, deed or other writing, for which some other person has the better title," is "taken and held to extend to the boundaries embraced or included by such patent, deed or other writing *unless the person having the better title shall have* actual adverse possession of some part of the land embraced by such patent, deed or other writing." In *Industrial Co.* v. *Schultz,* 43 W. Va. 470, 472, it is said: "If he have a writing, giving color of title, his possession goes to the extent of the boundaries specified in it, where there is no actual adverse possession under the better title within it." Citing the section of the Code, and *Oney* v. *Clendennin,* 28 W. Va. 34. It is argued that the possession or occupancy of David McClanahan, such as it was, must be presumed to have been under the good or better title. But is this so? John McClanahan having been in possession and actually residing on the land in controversy with enclosed and cultivated fields, if defendant relied on the protection of the statute was not the burden on it to show that David McClanahan was occupying the land for it or under it? Would his occupancy as a stranger to the title claimed by it interrupt the continuity of John McClanahan's possession, or render it less exclusive of the owner of the better title? We think a proper construction of our statute requires an answer in the negative. If David McClanahan's occupancy of the little patch in question was not under the better title of defendant, if his possession was that of a stranger, John McClanahan's possession was exclusive of the superior title of defendant, and as against that title the statute gave him possession to the limits of the boundaries described in plaintiff's deeds for the purposes of the statute of limitations. In *Core* v. *Faupel,* 24 W. Va. 238, 245, speaking of the quality, exclusiveness of possession, necessary to give one title by adversary possession, the court says: "To give that effect to his possession of a part of the land, the possession must be exclusive; *for if the true owner* is in the actual possession of any part of the land the disseisor will be confined to his enclosure or actual possession and he will not be considered as in possession to the boundaries of his deed or writing." But will the trespass or indifferent occupancy by a

stranger, to the title of the true owner, under our statute, work the same result to the other claimant's possession? The character of the possession of John McClanahan, under the statute, we think, rendered it exclusive, within the meaning of *Ketchum* v. *Spurlock,* 34 W. Va. 597, 599; *Maxwell* v. *Cunningham,* 50 W. Va. 298, 316; *Wilson* v. *Braden,* 56 W. Va. 372. The fact that the possession is continued, hostile, actual, visible, exclusive, and adverse to the owner of the legal or better title is the test of our statute, and is emphasized by our cases just referred to. In 2 Am. & Eng. Ency. Pl. & Pr. (3rd ed.) 386-7, it is said: "In order that the possession of the claimant may ripen into title, the doctrine has been frequently announced that it must be exclusive. To render ones possession exclusive he is not, of course, required to exclude every one from all entry on the land, but merely from all possession of the land." The same book at the latter page says, that the exercise by the public or by the owner, of an easement or way over land will not necessarily prevent the possession from being exclusive. The rule that possession follows the title, much relied on by defendant, seems from the same authority to be applicable only where the possession of the claimant is in common with the owner of the land, not to the case of a stranger to the title. The many cases on the question of exclusiveness of possession are collated in note 23, at page 386, of the authority just cited. One case, *Ward* v. *Cochran,* 150 U. S. 597, 608, may seem to imply that possession to be exclusive must be exclusive of all others and not to be limited to the true owner of the legal title. That was a case from Nebraska, not controlled by any statute, as the court observes, at page 605. It depended for its decision on the rule applied in the courts of that state, in the federal courts, and other courts not controlled by statute. One of the cases cited, *French* v. *Pearce,* 8 Conn. 439, 440, limits the exclusive occupancy to the true owner. Two or three of the Nebraska cases cited seem to hold that the possession must be exclusive of all other persons. But we do not think our statute should receive an interpretation extending it to other than the owner of the legal title, and certainly not to the character of possession held or claimed by David McClanahan, the real point for decision in this case. We have already alluded to the size and character of

David McClanahan's possession and enclosure—a small patch of half an acre within the four hundred acres involved. If this was a contest between plaintiff and David McClanahan could the latter prevail over the former, even as to the small lot occupied by him? David McClanahan did not reside on the land in controversy. John McClanahan did—had his house there, as well as enclosed and cultivated fields. Our cases following decisions in other states hold that the enclosure, which will amount to exclusive possession and bar the true owner, must be a substantial one, that partial enclosure, or enclosure by felling trees and lapping them around the land, or enclosure by brush fences, is, as a general rule, too loose and indefinite. See *Industrial Co.* v. *Schultz, supra,* and cases reviewed therein. Such, to a large extent, seems to have been the character of possession and enclosure by David McClanahan, and would not be good as against the true owner of the land, and we do not think it should be regarded as interrupting the exclusiveness of the possession of John McClanahan for plaintiff. Such was evidently the view taken by the court below and covered by plaintiff's instruction to the jury No. 8.

But was plaintiff's possession interrupted and its rights by adversary possession defeated by the act of John McClanahan in accepting the lease from Beckley of January 1, 1904? While this lease is offered in evidence and is copied into the record, it was rejected, and was not before the jury, and it constitutes no part of the record, not being made so by a proper bill of exceptions. But suppose it was a part of the record, was it properly rejected? We think it was, unaccompanied as it was with any evidence of notice by McClanahan to his landlord thereof, or of adverse holding by him. The lease does not appear to have been recorded so as to give even constructive notice. John McClanahan denies that he ever accepted a lease from Beckley for any land within the boundary claimed by plaintiff. His evidence is that he leased from Beckley the Ditzel place outside the blue line, not within the disputed boundary. But whatever be the fact as to the contents of the lease, it is immaterial if notice of the lease and of adverse holding thereunder, and termination of his tenancy under his lease from Stevens, was not given plaintiff by McClanahan. Defendants' counsel argue there is

evidence tending to show such notice to plaintiff, and they rely on *Voss* v. *King,* 33 W. Va. 236. No such evidence is pointed out, it is denied by plaintiff's counsel, and we have not found it in the record. The only evidence which we find relating to the subject is that of John McClanahan himself. On cross-examination he was asked: "You did tell the Point Mountain people or their agent, that you were holding under the Holly Company or E. A. Beckley? A. I told them I was holding that Ditzel place. Q. Tell them you were holding that land? A. Yes sir. Q. Did you tell them you had a contract? A. Yes sir, for the Ditzel place. Q. Tell them it was on record? A. I don't know whether I did or not. I told them that I had a lease for the Ditzel place." But on re-direct examination he swears that he never so told plaintiff or Martin, plaintiff's representative, until after this suit was brought. Such notice, of course, would not bring the case within the principles of *Voss* v. *King.* While the principles of this case are recognized in 2 Am. & Eng. Ency. Law & Pr. (3rd ed.) 435, it is there said: It has been held, however, that the recognition of title or attornment by the tenant of the adverse claimant, if done without the latter's knowledge, would not necessarily interrupt the continuity of such claimant's possession. But does not our statute, section 4, chapter 93, Code 1906, settle this question? It provides: "The attornment of a tenant to any stranger shall be void, unless it be with the consent of the landlord of such tenant, or pursuant to, or in consequence of, the judgment, order, or decree of a court." And in *Swann* v. *Young,* 36 W. Va. 57, this Court said, point one of the syllabus: "In this state the tenant may in some cases assert his adverse colorable title against his landlord without first restoring the possession; but his possession will not be adverse, until and unless notice of his disclaimer has been distinctly and unequivocally brought home to the landlord; and having entered under his landlord's title he cannot dispute it, in the sense of putting him to the proof of title." To the same effect is *Voss* v. *King, supra.* Point 2 of the syllabus of this case is: "If a tenant takes a secret lease or conveyance for land from a third party claiming to be the owner, without the knowledge of his landlord, the character of his possession will not be changed."

Remaining for consideration are plaintiff's exceptions to defendants' instructions to the jury numbers 4 and 5. The effect of these two instructions was to tell the jury that by the true construction of the decree of partition, and of the several subsequent deeds under which plaintiff claims the intention was to assign and convey lot No. 19, of the Pennell surveys, and that if by mistake or otherwise there was inserted in said decree and deeds a misdescription thereof, conflicting in any way with the original boundaries of said lot, such erroneous description must be rejected and said lot located by the true and actual boundaries thereof as such boundaries originally existed. The main criticism of these instructions is that they ignore or minimize the fact, that the error, if any, in description, originated with the report and survey of the commissioners and the decree thereon in the partition suit, carried into all the subsequent deeds, and which actually located this lot on the ground, with reference to natural objects called for and marked, and under which the decree and deeds as claim and color of title possession was taken and held for sufficient time to ripen into good title regardless of the true location of the original corners and lines of lot No. 19.

The true location of the original lines and corners of the two lots was one of the issues before the jury though not controlling. Plaintiff contended that the original lines and corners were located as surveyed and described in the decree of partition and subsequent deeds; the defendant that they were elsewhere; but as the rights of plaintiff did not depend alone on the true location of these original lines and corners, but on adversary possession, the location of the original lines and corners was really immaterial. The instructions are not binding instructions however. The court fully instructed the jury by other instructions given at the instance of the plaintiff, on the question of adverse possession, and as the true location of the original patent lines and corners was presented as an issue by both parties, and the instructions complained of, we think, properly propound the law on that subject, and we do not see that plaintiff was materially prejudiced thereby, although the issue covered by the instructions under the evidence was in fact uncontrolling and really immaterial.

On the real merits of the case, however, as presented, and for

the reasons given, we think, the verdict unwarranted by the evidence, contrary to the law, and that judgment thereon is erroneous, and ought to be reversed, the verdict set aside and a new trial awarded the plaintiff, and the judgment here will so order.

*Reversed and New Trial Awarded.*