# CHARLESTON.

RONK v. HIGGINBOTHAM & CARRIER.

54 137|
59 115
e 60 234

Submitted February 13, 1903.    Decided November 1, 1903.

1. EJECTMENT.
     In an action of ejectment, unless both plaintiff and defendant claim title from a common source, the plaintiff must connect himself by an unbroken chain of title with the state or commonwealth. (p. 142).

2. SYLLABUS APPROVED.
     Point 3 in *Wilson* v. *Braden et al*, 48 W. Va. 196, approved and applied. (p. 144).

3. SYLLABUS APPROVED.
     Points 5 and 6 in *Coal Co.* v. *Howell*, 36 W. Va. 490, approved and applied. (p. 145).

Writ of error and *supersedeas* from Circuit Court, Lincoln County.

Action by H. D. Ronk, against A. E. Higginbotham. Judgment for plaintiff and defendant appeals.

*Reversed and judgment for defendant.*

A. F. MORRIS, for defendant in error.

D. E. WILKINSON and W. S. LAIDLEY, for plaintiff in error.

MILLER, JUDGE:

On the 28th day of November, 1899, H. D. Ronk, the defendant in error, filed his declaration in ejectment in the circuit court of Lincoln County, against A. E. Higginbotham and Newton Carrier, defendants below and plaintiffs in error, alleging that plaintiff, on the 15th day of January, 1899, "was possessed of an estate in fee absolute of a certain tract or parcel of land, lying and being in the said county of Lincoln, containing two hundred and ninety-four acres, more or less," and bounded as follows: "Situate on Island Creek, a tributary of Coal River, beginning at a stake in a line of the John Kidd survey of sixty-three acres on Board tree branch," etc, to which declaration the defedants entered their plea of not guilty, and issue was thereon joined; and,

at the November term, 1901, a jury being waived by the parties, the court heard the evidence in lieu of a jury, found for the plaintiff, and gave judgment in his favor against the defendants, for the tract of land as described, with one cent damages for the detention thereof, and his costs in said action expended.

Plaintiffs in error excepted to said finding and judgment of the court, and moved the court to set the same aside, and to render judgment in their favor in said action; but the court overruled the motion. Whereupon plaintiffs in error tendered their bill of exceptions to the ruling and judgment of the court aforesaid, which bill was signed and sealed by the court, and made part of the record.

On the trial of the action, the plaintiff, to maintain the issue on his part, introduced certain evidence, all of which was objected to by defendants; and the defendants, to maintain the issue on their part, also introduced certain other evidence. The whole of said evidence, adduced and considered by the court, is certified in bills of exception, and made parts of the record.

Plaintiff put in evidence a patent from the Commonwealth of Virginia to Webb Tomlinson, bearing date on the 25th day of September, 1795, reciting "that by virtue of a land office treasury warrant number nine hundred and ten, issued the first day of December, 1794, there is granted by the said Commonwealth unto Webb Tomlinson a certain tract or parcel of land, containing ten thousand acres by survey, bearing date the second day of January, 1795, lying and being in the county of Kanawha, on the waters of Davis Creek, and bounded as follows, to-wit: Beginning at two white oaks, corner to said Tomlinson's survey of ten thousand acres, number eight, and running south eighty degrees West, two thousand poles to a white oak S. 10 E. eight hundred poles to a black oak, N. 80 E. 2,000 poles to two white oaks, N. 10 W. 800 poles to the beginning;" and also introduced a decree of the circuit superior court of law and chancery of Kanawha County, State of Virginia, made on the 24th day of October, 1840, reciting that "James M. Laidley and Thomas L. A. Mathews commissioners of delinquent and forfeited lands in and for Kanawha County, this day made report in pursuance of the several acts of Assembly relating to delinquent and forfeited lands to the circuit superior court of law and chancery for said county, of a tract of 10,000 acres of land

lying and being in this county on the waters of Davis Creek and Coal River the lines boundaries and abuttals of which said tract or parcel of land are fully set out and described in the report of the commissioners and more particularly shown and illustrated by a plat accompanying and making a part of said report made from a recent survey by the Commissioners and which tract or parcel of ten thousand acres of land was granted by the Commonwealth of Virginia unto said Webb Tomlinson by patent bearing date the 25th day of September, 1795," etc. The decree also directs a sale of said land by said commissioners on terms prescribed therein.

Plaintiff then introduced in evidence another decree of said court, made on the 17th day of May, 1841, in words and purport as follows: "James M. Laidley and Thomas A. Matthews, commissioners of delinquent and forfeited lands in and for the county of Kanawha this day made report that pursuance of a decretal order made in relation to the parcel of ten thousand acres of land forfeited in the name of Webb Tomlinson and pronounced at the October term, 1840, they proceeded to make sale of the same, having divided it into two separate lots. * * * That said parcel of land containing by recent survey ten thousand acres, sold in lots or divisions as aforesaid, produced the aggregate sum of $151.25; * * * and the said report not being excepted to, on examination and consideration thereof is approved and confirmed. * * * * It is further adjudged, ordered and decreed on the payment of the purchasers of the deferred instalments, that the Commissioners by apt and proper deed or deeds convey to him said land purchased by him as aforesaid in pursuance of the acts of assembly in relation thereto," etc. Next follows a deed made by James M. Laidley and Thomas S. A. Mathews, commissioners of delinquent and forfeited lands to Joel Shrewsberry, Jr., bearing date on the 5th day of May, 1841, reciting a decree made by said Court "at the fall term of said court in 1840," and that they "did offer at public sale at the door of the court house aforesaid on the ——— day of December, 1840, among others, the tract or parcel of land hereinafter described and at the public sale the said Joel Shrewsberry, Jr., the party of the second part being the highest bidder became the purchaser of lot or tract No. 2 containing four thousand

two hundred acres, more or less, being part of a tract or parcel of land of ten thousand acres lying and being in the county of Kanawha on the waters of Davis Creek granted by the Commonwealth letters patent bearing date the 25th of September 1795 to Webb Tomlinson and forfeited and sold in the same name as more fully and at large appears by the reports, decretal orders and other proceedings in relation thereto and now remaining in the said circuit superior court, reference thereunto being had and which said lot or tract No. 2 part of the said tract of ten thousand acres is situated on the west side of Coal River in the county aforesaid and more fully set out and described as lot No. 2 in the plat and report of the commissioners filed with and made part of the proceeding aforesaid which said lot No. 2 is bounded as follows: Beginning at a post, corner to No. 1 on the bank of Coal River," etc. Said deed appears to have been acknowledged by said commissioners on the 7th day of May, 1841, and admitted to record the same day.

By their deed, bearing date on the 5th day of May, 1841, and acknowledged on the 11th day of May, 1841, said Shrewsberry and his wife conveyed said land, by the description last aforesaid, to Joseph H. Harvey, with covenants of special warranty for the consideration of one dollar. Said Joseph H. Harvey and his wife, by their deed, bearing date on the 21st day of November, 1870, conveyed said land to William S. Wilson by the same description, and, as stated in the deed, "being the same tract conveyed by Joel Shrewsberry and wife to Joseph H. Harvey, by deed bearing date on the 5th day of May, 1841." William S. Wilson and his wife by their deed, bearing date on the 5th day of September, 1873, for the consideration of one dollar, conveyed said land to Robert T. Harvey and Thomas H. Harvey, by the description aforesaid; but excepting certain portions thereof which had theretofore been sold. Next in the order as mentioned, come the following deeds; showing that Robert T. Harvey and wife, and Thomas H. Harvey, by deed bearing date on the 6th day of January, 1874, for the consideration of one dollar, conveyed to Alfred Sperry, Ethello W. Hale and Willard P. Sperry, the following described tract of land lying and being in the county of Lincoln, and bounded as follows: "Beginning at a Sycamore on Coal River, containing about eleven hundred acres," etc.

That Ira P. Sperry, S. J. Ritchie, and Willis Sperry and their

wives, by deed, bearing date on the 11th day of August, 1888, conveyed to George F. Miller and B. F. Enslow the said tract of eleven hundred acres, by the description last aforesaid.

And that Geo. F. Miller and B. F. Enslow, and their wives, by deed bearing date on the 9th day of July, 1895, conveyed to the plaintiff, H. D. Ronk, "all their right, title and interest in and to the land, owned by them on the waters of Coal River and Island Creek in Lincoln County, West Virginia, consisting of four tracts." All are described by metes and bounds. The first contains two hundred and ninety-four acres, and is the land in controversy.

A. C. Hilbert, a surveyor who had surveyed the land in controversy testified that he had surveyed it at the instance of said H. D. Ronk by the deed to him from Miller and Enslow. He had made a plat of his survey of the land, which covered the said two hundred and ninety-four acres. The plat was introduced with the evidence. Thos. J. Mathews, who testified that he had been a surveyor about forty-eight years, was examined as follows: "Have you surveyed that portion of Webb Tomlinson's survey introduced here in evidence, lying on the west side of Coal River? Ans. Yes, sir. Q. Please state whether the land conveyed in the deed from James M. Laidley and Thomas L. A. Mathews to Joel Shrewsberry, introduced in evidence here, covers the same land as the patent to Webb Tomlinson's land that lies on the west side of Coal River? Ans. I don't know as I ever saw the patent. I have run out the land by the deed. Q. I hand you the patent to Webb Tomlinson for ten thousand acres, please state whether the land mentioned in that patent covers the land mentioned in the deed to Joel Shrewsberry? Ans. It has the same corners and distances." Witness further stated that he was acquainted with the four thousand and two hundred acre tract, a part of the Webb Tomlinson survey that lies on the west side of Coal River; that he had surveyed it; run out of it the prior claims, and divided it into lots for the Harveys, or Enslow and Miller; that he was familiar with a lot of that land purchased by Ronk, the plaintiff; and that the land claimed by plaintiff, and described in his declaration is part of said four thousand and two hundred acres.

H. D. Ronk, the plaintiff, testified that the land in controversy lies in Lincoln County on the waters of Island Creek, on the west

side of Coal River, and that defendants were in possession of it at the commencement of this action. Thereupon the plaintiff rested his case.

The defendants then introduced a patent from the Commonwealth of Virginia to Daniel Shaver, bearing date on the 27th day of September, 1796, which recites that by virtue of a land office treasury warrent No. 8319, issued on the 2nd day of April, 1872, there is granted by the said Commonwealth unto Daniel Shaver a certain tract of land, containing two hundred and fifty-six acres, by survey, bearing date the 7th day of May, 1791, lying and being in the county of Kanawha on Island Creek, a branch of Coal River. This was followed by various deeds down to defendants (under which they claim the land in controversy) with other evidence tending to prove adversary possession of the land and payment of the taxes thereon for the required number of years, under the statute.

Plaintiffs in error contend that the judgment and rulings of the court below are erroneous because the plaintiff failed to identify and establish his title to the real estate described in his declaration; and also failed to trace his title either to a common source, or to the Commonwealth, and because the court refused to set aside its said judgment, and render judgment in favor of the defendants.

In an action of ejectment, the general rule is that a plaintiff must recover upon the strength of his own title, and not upon the weakness of defendant's title, and that before the plaintiff can recover he must identify the land claimed, so far as the exterior boundaries are concerned. *Coal Co.* v. *Howell,* 36 W. Va. 490; *Wilten* v. *St. Clair,* 27 W. Va. 763.

Plaintiff introduced no survey of the ten thousand acres of which said two hundred and ninety-four acres is claimed to be a part. We are not informed by any evidence where the exterior boundaries of the ten thousand acres are. It is not shown that the land in controversy was ever included in the county of Kanawha.

The deed of said commissioners, purporting to convey said four thousand, two hundred acres to Shrewsberry is not accompanied by any of the reports, decretal orders, or other proceedings, or with the plat and report stated to have been filed with, and made part of, said proceeding, which are referred to in

said deed, except the decretal order of October 24, 1840, herein-before mentioned.  It will be observed that the decree of the 17th day of May, 1841, confirming the sale of ten thousand acres, sold by said commissioners, was made and entered twelve days after said deed was made to Shrewsberry.  This deed having been ac-knowledged by said commissioners on the 7th day of May, 1841, and admitted to record the same day, as the certificate of the clerk of the county court of said  county,  appended  thereto shows, could not have been and was not authorized by said de-cretal order of May 17, 1841, which order does  not  mention Shrewsberry or any other person by name as purchaser of said four thousand, two hundred acres.  There is no other decree in the record conferring authority to execute said deed.  In the case of *Walton* v. *Hale,* 9 Grat 197, 198, the court says: "But in this case it seems to me the caveator has utterly failed in connect-ing himself with the Ruston and Blanchard title.  The commis-sioner to make sales under the delinquent  land  laws,  under which these proceedings were had, has no interest in the subject of sale.  He acts like a commissioner to make sales under a de-cree of the chancery court, and is clothed with a mere naked authority.  Having no interest in the land conveyed, the deed of the commissioner could avail nothing where his authority to make it did not appear, unless there had been such a long ac-quiescence and possession under the deed as to justify  a pre-sumption in favor of the deed, as was the  case  in *Robinett* v. *Preston,* 4 Grat. 141.  In this case no such presumption can be raised.  The caveator has rested his right upon the deed and the proceedings which led to it.  In such a case, and as against  a stranger setting up an adverse claim to the title asserted, the re-citals in the deed are no evidence. *Carver* v. *Jackson* 4 Peter's 1, 83; *Wiley* v. *Givens,* 6 Grat. 277.  In the case of *Masters* v. *Varner,* 5 Grat. 168, a decree of the chancery court and the marshal's deed were offered in evidence.  The decree did not de-scribe the specific land directed to be conveyed; but it was de-scribed with sufficient certainty in the deed.  The court held that the recitals in the marshal's deed were no evidence as against a third person asserting an adverse claim, of the authority of the marshal to convey the specific tract; and that as the decree left it uncertain, it was necessary to produce the whole record, or so much thereof as would show that the land conveyed was the land

embraced in the suit, before the deed could be used as evidence. In the case under consideration, the report of sales set out that Raper, Graham and Allison were the purchasers. By the eighth section of the act of March 30, 1837, it was the duty of the court to direct the commissioner to convey to the purchasers upon the payment of the purchase money; and the ninth section of the act of 15th March, 1838 declares that the purchaser shall, on application to the commissioner, be entitled to his deed upon the payment of the purchase money. By each act the authority of the commissioner is limited to a conveyance to the purchasers. The deed in this case is to a stranger, if regard be had to the record of the proceedings, which are relied on as authorizing the commissioner to convey. The name of Walton nowhere appears as purchaser, or as having any interest in the subject."

In *Wilson v. Braden,* 48 W. Va. 196, 200, this Court said: "In this record is a deed made by Camp, as commissioner under a decree of a Virginia court, conveying land to Donaldson as trustee. If Donaldson had any title, he got it by this deed; but not a letter of authority in Camp to make this deed is shown. The decree giving Camp power to convey does not appear; not an item of the Virginia record was produced. This was essential to give any effect whatever to that deed. You must give in evidence, as a general rule, in such case, the whole record; but surely enough to show that the party holding the title to the land and the land were before the court; that that land was decreed to be sold, and was sold, and the sale confirmed and authority given by decree to the commissioner to convey. That commissioner does not own the land. He has a mere naked authority uncoupled with any personal interest. His authority to make the very deed for the very land he conveys must appear by the record. This has been so often held. *Waggoner v. Wolf,* 28 W. Va. 820. The recital in that deed of Camp's authority under decree is no evidence against third parties claiming adversely to it, and denying his authority to convey. *Walton v. Hale,* 9 Grat. 198. Yet this deed went in evidence for Braden to show title, to connect Braden with the old patent, and was used by the jury as such in connection with said instruction. That deed did not show title. It did not connect Braden with the patent of 1784." See also *Watson v. Smith* 13 Johns 426. For the same reason, we say that the deed of Laidley and Mathews, as commissioners, to

Shrewsberry does not connect the plaintiff with the patent issued to Tomlinson by the Commonwealth of Virginia for the ten thousand acres.

It will be further observed that Alfred Sperry, Ethello W. Hale and Willard P. Sperry, the grantees of Robert T. Harvey and Thomas H. Harvey, of the eleven hundred acres have not, so far as the record discloses, conveyed said land to any person. The description of the eleven hundred acres of land contained in the said deed from S. J. Ritchie, Willis Sperry and J. P. Sperry, and their wives, to Miller and Enslow is similar to the description of the eleven hundred acres in the deed of the Harveys to their grantees above mentioned, but there is no evidence in the case to explain how the grantors of Miller and Enslow derived their title. So far as it appears, the title to the said eleven hundred acres, conveyed by the Harveys, is outstanding in Alfred Sperry, Ethello W. Hale and Willard P. Sperry. This is fatal to plain- tiff's case. In *Coal Co.* v. *Howell*, 36 W. Va., 508 the Court says: "And the reason for it is that the defendant in possession, and the *prima facie* owner, is not required to give up the possession until the true owner demands it. And the doctrine of setting up a subsisting outstanding title in a stranger, rests upon the same foundation." "Where a plaintiff relies on documentary proof of title a complete title must be shown; and if a material link be wanting, his documentary proof should be excluded from the jury." *Jenkins* v. *Noel*, 3 Stewart 60. In this case, there are two material links lacking. Besides, the plaintiff has not sufficiently identified the ten thousand acre tract of land, of which said 294 acres in controversy is claimed to be a part. Neither has he shown an unbroken chain of title thereto, from the Commonwealth of Virginia to himself. But on the contrary, so far as the record discloses, the title to said two hundred and ninety-four acres, was, at the commencement of plaintiff's action, and still is, in the grantees of Robert T. and Thomas H. Harvey.

For the reasons stated, the judgment of the circuit court, aforesaid, is erroneous and must be reversed and set aside, and a judgment rendered by this Court for the defendants.

*Reversed and Judgment for Defendants.*