# CHARLESTON

## WADE *v.* McDOUGLE.

Submitted January 12, 1906.   Decided February 20, 1906.

1. EJECTMENT—*Right of Recovery.*

   A plaintiff in ejectment must locate his own land and recover upon his own title, and the fact that the defendant's land does not cover the land in dispute or lie where the defendant claims it to lie, or that his title is not good, is immaterial and irrelevant.   (p. 115.)

2. ADVERSE POSSESSION—*Color of Title—Evidence—Commissioner's Deed.*

   A deed from a special commissioner purporting to be made under authority of a decree is admissible in evidence to give color of title for adverse possession, though such decree is not shown.   (p. 116.)

3. EVIDENCE—*Statement of Third Person.*

   Statements by a person cutting timber on land or cultivating it, that he is so doing under authority of a certain person as owner, made while so doing, are admissible when the question of possession by such owner is involved.   (p. 118.)

4. EJECTMENT—*Judgment, effect of.*

   A verdict and judgment in ejectment by which the plaintiff recovers land in fee, of their own force, vests title in him, and take title, from the defendant, if he had any.   (p. 118.)

5. SAME—*Boundary Lines.*

   A verdict and judgment in ejectment fixing a line are final and conclusive between the parties and their privies in estate as to the location of such line.   (p. 119.)

6. SAME—*Judgment, effect of—Adverse Possession.*

   A verdict and judgment in ejectment by which the plaintiff recovers the contested land destroy all title in the defendant at the date of the judgment.   The defendant, by adverse possession beginning after judgment, may acquire title, but possession prior to the judgment cannot be considered.   (p. 120.)

7. BOUNDARIES—*Agreed Line—Validity of Agreement.*

   To make valid an oral agreement to fix a line between two contiguous tracts of land there must be doubt and uncertainty as to the true place of the line, else the agreement is void,   Where there is in fact, such doubt and uncertainty, such oral agreement, if at once carried into execution by actual possession, is valid without other consideration than the settlement of disputed boundary.   (p. 122.)

8. SAME—*Possession.*

   A mutual express agreement between adjoining owners fixing their dividing line is of no force, unless actually executed immediately by taking possession actual up to it.   (p. 122.)

8

9. COMPROMISE—*Offer—Effect.*

A person is not bound by an admission in an offer to compromise not accepted by the other party. (p. 123.)

10. EVIDENCE—*Admissions as to Title.*

Where legal title to land is vested in one his mere oral disclaimer · or admission of no title cannot devest his title. It binds him not. (p. 123.)

11. BOUNDARIES—*Possession—Establishment of Boundary by Acquiescence,*

To establish a line between adjoining owners, in absence of express agreement fixing it, by acquiescence and recognition, there must be possession actual up to it by the party claiming the benefit of the line at least for a time prescribed by the statute of limitation, with acquiescence and recognition of such line by the other party, he knowing of such claim by his adversary. (p. 124.)

12. ADVERSE POSSESSION.

Mere occasional grazing cattle or cutting timber or sod on land does not constitute adverse possession under the statute of limitations. (p. 124.)

13. SAME—*Inclosure.*

· Actual inclosure by fence is not indispensable for adverse possession under the statute of limitations. It is sufficient if the possession be marked or held by inclosure by fence, by cultivation, residence, clearing, or any plainly visible and notorious manifestation of sole, exclusive possession, according to the nature of the case. (p. 126.)

14. SAME—*Color of Title—Possession.*

Where there is no color of title, possession, for the purpose of adverse possession, is confined to the land in actual, open, notorious, exclusive occupation by inclosure by fences, residence, clearing, cultivation or such other act, notorious and open, according to the nature of the case, telling the world of adverse possession under his own claim. (p. 128.)

Error to Circuit Court, Wood County.

Action by C. A. Wade, as sheriff, against A. H. McDougle. There was judgment for plaintiff, and defendant brings error.

*Reversed.*

H. P. CAMDEN, for plaintiff in error.

MERRICK & SMITH, for defendant in error.

BRANNON, JUDGE :

Daniel R. Neal brought an action in ejectment in the circuit court of Wood county against A. H. McDougle counting in

his declaration for a tract of sixty acres. A disclaimer was made by the defendant for all of the tract except a parcel of specified boundary containing about fifteen acres. A trial resulted in a verdict and judgment for the plaintiff.

Defendant's first assignment of error is, that the plaintiff was allowed to prove a survey, made under an order of survey in the case, of the land covered by defendant's deed. The plaintiff claimed that the deed under which the defendant claimed does not include the land in contest. The plaintiff introduced a deed for the sixty acres dated 1st February, 1867, from William Logan to Daniel R. Neal, under which the plaintiff claimed, but traced no title back to the state. On the strength of paper title, the plaintiff showed no title; for to recover on paper as *per se* giving superior title, it must trace back to the state, unless the title of the contestants comes from a common grantor. *Ronk* v. *Higginbotham*, 54 W. Va. 137. No show to recovery by the plaintiff on paper title was made in this case. The plaintiff did not even give evidence of the boundaries of the Logan deed to show that it covers the land in controversy. If the plaintiff showed no title in himself, what matters it where the land embraced within the defendant's deed lies? In ejectment the plaintiff must, if he claims under paper title, locate his exterior boundary, so as to show that his title takes in the disputed land. *Miller* v. *Holt*, 47 W. Va. 12. What matters it whether the defendant has title or not, if the plaintiff himself has no title? He must gain on the strength of his own title, not on the weakness of the defendant's title. *Lowe* v. *Settle*,, 32 W. Va. 600. Thus, it would seem that this evidence of the defendant's location would be immaterial, and introduce a matter, and call on the defendant to meet it, not pertinent to the case, and calculated to hurt his defence before the jury. It could not locate the plaintiff's land, as he had no title to locate. If it is said that to locate the defendant's deed would locate the Logan deed, as the Logan deed calls for the "Neal and Stokely line", the reply is, the Logan deed is not surveyed, and the deed to Beckwith does not call for the line.

A second assignment of error is, the admission of evidence of surveying a line between a tract owned by the city, known as the city hospital ground, and a tract of Sarah Neal. I do

not see what light this could throw on the case. It could add to the intricacy and difficulty of the case and confuse the jury. It was not relevant. Neither claimed under or de-. rived title from the owners of those tracts. Their location would not settle the location of the claims of the plaintiff or defendant. The call in a deed to which the ·Lauch deed referred for the Neal line was not binding on the defendant; it was *res inter alios acta.*

A third assignment of error is, that plaintiff gave evidence to prove that defendant's deed would not reach the disputed land, is well taken under principles stated above, that the plaintiff must show that his own right covered the land. And mere call for distance is not material when a fixed line is called for.

A fourth assignment of error is, the admission of a deed from Taylor, commissioner, to Sanders, no authority to make it being shown, and no connection being shown between the title of one Davis, whose title the deed purports to convey, and the plaintiff. As passing title it was not admissible; but the plaintiff after giving that deed in evidence, gave in evidence a deed from said Sanders to William Logan, and a deed from Logan to the plaintiff. As color of title for adverse possession, I see no objection to the deed. *Mullin* v. *Carper*, 37 W. Va. 215.

A fifth assignment of error is, the admission in evidence of a deed from Sanders to Logan. It is admissible for color of title in connection with the deed from Logan to plaintiff. It is said the descriptions in the two deeds vary. If it were plain that they relate to different land, this would be a good objection; but that seems to me to be a question of identity as a fact for the jury; that is, whether it could give any color as to the land in contest. The fact that no surveying was don eto show the location of the land described in the deed only went to make it weak as affording color of title for the land.

The sixth assignment of error is, the admission in evidence of a deed from Lauck and Logan to Logan and Leach. It is not claimed that the plaintiff claimed the land in this deed, or had any privity with it, or that it bounded on the land conveyed to him by Logan. It was in no sense in controversy. It was irrelevant, producing confusion before the

jury. The argument for it is that Logan's deed to the plaintiff refers to this deed, and this deed calls for the Neal and Stokely line. What if it does? Is it used to locate that line? It cannot do so. It is a declaration by its parties that that line was there; but does their declaration or assertion bind the defendant? No surveying of its bounds proves that declaration true.

The seventh assignment of error is, in the admission in evidence of a deed from Logan and Leach to Parkersburg. What has been said under the sixth assignment here applies.

The eighth assignment of error is, the admission in evidence of a decree of partition and plat of lands of Bradford's estate. They were transactions between strangers to this suit, not involving the land in dispute. It is claimed that these papers are admissable, as Beckwith's deed, under which defendant claims, calls for this Bradford land. That would tend to locate the land of defendant; but the plaintiff is suing, and must show where his land is, no matter where may be the defendant's. Possibly, if the plaintiff had had his tract under the deed from Logan to him surveyed and proven, his right to go to a line the same as the line of Bradford, the call in Beckwith's deed might be an admission of the location of Beckwith's line; this is doubtful, because the defendant was not a party to the partition, so as to give it force to establish the true place of the Bradford line. Surely the action of parties to the partition of the Bradford land could not fix its bounds so as to bind Beckwith to a particular line as being the true place of that line called for in his deed. It is *res inter alios acta*. Action of one party does not bind strangers. But this Bradford land was not surveyed, but laid down by protraction. Where are its lines on the ground? I do not see that the Bradford land can locate the defendant's land. Would that show that the defendant's land is in a particular place? It is an effort, by the partition of other people's land, not in controversy here, to show that the defendant does not own the land in controversy, without showing that the plaintiff owns it. This partition has no connection with this suit.

The ninth assignment of error is, the admission in evidence of a deed from Phelps to Bradford. What does it show shedding light on this case? It is between strangers to it.

Can their acts locate the land involved? No survey of the land mentioned in that deed gave it local habitation, as may be also said of other papers admitted, even of the deed of Logan to the plaintiff. It does not purport to, and could not, locate the plaintiff's boundary. Not every paper can be introduced in ejectment. Irrelevant ones cannot be.

The tenth assignment of error is, that witness McConnell was allowed for the plaintiff to prove that Crummitt and Leary, whom he saw cutting timber and sod and cultivating, told him they were doing so under Neal. They were on the ground when so stating. Declarations of one in possession explanatory of the character of his possession—that is, how he claimed, under whom, are admissible. They are part of the act of possession, part of *res gestæ.* Cannot a tenant admit that he holds under a certain person? *High* v. *Pancake,* 42 W. Va. 602; 24 Am. & Eng. Ency. L., (2d Ed.), 688-9-90; note to *Marcy* v. *Stone,* 54 Am. Dec. 74; *Leger* v. *Doyle,* 70 *Id.* 240.

The eleventh assignment of error involves principles important in the case. It is the giving of an instruction to the effect that if Logan, at the date of his deed to the plaintiff Neal, February 1, 1867, had been prior to that date, and claiming under the deed from Sanders to Logan, in actual possession for ten years of any part of the land in controversy in this suit, and the deed to Neal included the land in controversy, and the defendant during said period did not have actual possession of any portion of the land in controversy, then Logan acquired a good title to the land in controversy, and by his deed conveyed the same to Neal. Conceding, as the plaintiff must, and practically does, that he showed no title by documents, his claim is that his title became perfect under the statute of limitations. Let us suppose that Logan had, and by his deed conveyed to Neal, good title so acquired. As will appear from the report of the case of *Beckwith* v. *Thompson,* 18 W. Va. 103, in 1871 Beckwith brought an ejectment against Thompson and others to recover a tract of land of two hundred and twenty-five acres, which resulted in a verdict and judgment for Beckwith, affirmed by this Court 14th May, 1881. It was claimed in that suit by its defendants that the two surveys below mentioned did not adjoin on their first two lines, but that

there was vacant land between them, which was patented and claimed by defendants. Thus the case involved that question, and if adjoining, the question, Where is the Neal-Stokely line? Beckwith, the plaintiff in that suit, is the same person whose title vested in McDougle, as executor with his will annexed, defendant in the present suit, and Neal, a defendant in that former suit, is the same person who was plaintiff in this suit, and whose title vested in Wade as executor with his will annexed, the plaintiff by revival in the present suit. Neal claimed derivatively under a grant from Virginia to James Neal, dating 14th September, 1785, for four hundred acres, beginning at a sugar standing on the bank of the Ohio, and running S. 24 E. 117 perches, S. 39 W. 243 perches. Beckwith claimed derivatively under a grant from Virginia for twelve hundred acres, dating 9th May, 1804, to John Stokely, "beginning at a sugar tree, corner to James Neal's survey, a small distance from the mouth of the Little Kanawha river, and on the bank of the Ohio river, running thence with two of his lines, South 24 E. 117 poles to a white oak; S. 39 W. 243 poles to a black oak" etc. The controversy in the present case is as to land on the second line dividing these adjoining old surveys. The jury in the former case fixed both lines. It ran them from C to D and from D to E on the plat of surveyor Farrow made under an order or survey in that case and used on its trial. Where is that line D E? Wherever it is it is a finality to fix that line between Neal and Beckwith and those claiming under them, binding on the parties to this case. Neal claims that it was fixed wrong in that case. Whether it was fixed wrong or right by that jury and the circuit court and Supreme Court, is now no difference, as it has passed into final judgment and must give peace. No matter whether Beckwith's deed really covered the land or not. The judgment is his deed. That verdict and judgment operated to vest title in Beckwith as against Neal up to that line just as effectually as if Neal had conveyed or released the land to Beckwith to that line. If Logan had in any wise, by deed or by limitation, acquired title, at the date of his deed to Neal, beyond that line, and passed it to Neal by that deed, that title was lost to Neal by force of that verdict and judgment. It needs no authority for this old

proposition of the law of finality of verdicts carried into judgment. The Code, ch. 90, section 35, gives a judgment in ejectment such effect. Otherwise what is ˙ the use of a suit, verdict and judgment? But the instruction in hand says that possessson would give title to Logan and he passed it to Neal, leaving the inference that Neal thus got legal title, and still held it, regardless of the effect of the subsequent verdict and judgment. The instruction forgets that element of the case. Any title existing before in Logan or Neal was gone, and immaterial in the present case. It is useless to discuss whether there was such possession anterior to Logan's deed as to give him title. After that judgment Neal must get a *new* title by possession or˙ otherwise for land on the Beckwith side of the line fixed by the jury. He has no title by conveyance, as none appears. He must then get it by *new* possession, a *new* title by possession after judgment in the former suit. The finality of said trial is another reason why it was error to allow evidence of a survey of the land in the deed from Stokely to Beckwith. The verdict located that deed; the verdict is the deed; its boundaries are the only test without the deed. Where are they? What land does the verdict give Beckwith? These are the questions. The plaintiff's declaration calls for bounding his claim on the Stokely-Neal line. That line is where the verdict laid it down on the ground. I would say not where the deed placed it, if I could say that the verdict differed as to its place from the deed, as I do not say. Such is the force of the verdict and judgment in the old suit.

I do not think this oblivion in this instruction of the judgment is cured by the instruction spoken of under the next assignment of error, which puts recovery by Beckwith from Neal in as an element of its hypothesis. This instruction is so strong in stating that Logan acquired title by possession before he conveyed to Neal, that it was calculated to confuse the jury and inspire belief that such title was still in Neal, and it would not be going very far to say that they conveyed inconsistent impressions. How any jury could avoid confusion amid so many instructions as were involved in the case, we cannot realize. Hence the need of clearness. This instruction, I repeat, is faulty in not incorporating the former judgment in its hypothesis. If that judgment cov-

ered the land in contest, Logan's or Neal's title before its
date was utterly immaterial and foreign to the case. If that
verdict fixed the line as the Beckwith side claims, it is im-
material whether he had possession before it or not of his
tract.

Defendant's counsel says that the uncontradicted testimony
shows that the old verdict found for Beckwith the land in
controversy, and for this reason the instruction was improper.
Just where the line fixed by the verdict is, is a question of fact,
on which we cannot properly express an opinion, in view of
a new trial. We say however, that if the verdict in the former
case gave the land to Beckwith, that is an end to Neal's claim
to its date.

The twelfth assignment of error is, an instruction that if
good title was conveyed to the land in controversy by Logan's
deed to Neal, the jury should find for the plaintiff, unless
Beckwith thereafter, in a court of proper jurisdiction, recov-
ered the land from Neal, and if such recovery was shown,
the plaintiff could prove title to himself acquired after such
recovery by adverse possession "under color claim of title
other than that adjudicated in such suit, or otherwise." It is
not easy to say what the instruction means. The deed from
Logan to Neal was in evidence in this case. It was not in
the Beckwith-Thompson action. This instruction would say
that the suit did not affect Neal's title under the Logan deed,
because not adjudicated. This would leave that deed to have
force notwithstanding the former suit. So the jury might
say. But that is not correct. That judgment wiped away
all title of Neal acquired under his deed from Logan. The in-
struction says that Neal could acquire title by possession
"or otherwise." How otherwise? Under the evidence there
is no appearance of claim except under the Logan deed or
possession. It seems indefinite and misleading. And plaintiff
could not go beyond the Neal-Stokely line, as his declaration
only claims to it.

The thirteenth assignment of error is, that the court in-
structed that if Beckwith by said former suit recovered of
Neal land adjoining the land described in the deed from Logan
to Neal, 1st February, 1867, and after such recovery Beck-
with had the lines between his lands so recovered and the
land of Neal, "run and established as now claimed by the

plaintiff, and recognized and treated such line as the line between the said line of Beckwith and Neal, acquiesced therein thereafter,. and for ten years prior to the institution of this suit, said Neal had actual adverse possession of the land in controversy claiming to the line so run, and established by said Beckwith, then the jury should find for the plaintiff.''

This instruction, after conceding recovery by Beckwith in the former suit, whereby clear title would vest in him, and which would give certainty and remove all doubt as to the line, says that mere agreement, acquiescence by Beckwith and possession by Neal would pass and transfer Beckwith's title fresh from victory. The law says that it takes a deed to pass land. If it is to be done by agreement on a line, there must be. doubt and uncertainty as to the true line. Here there was no doubt, no uncertainty. The old suit removed uncertainty and doubt. Doubt and uncertainty constitute the consideration for the agreement to stand on. *Le Compte* v. *Freshwater*, 56 W. Va. 326; 5 Cyc. 932; *Turner* v. *Baker*, 27 Am. R. 226. Therefore such agreement, if proven, would be void. And there must be controversy; and the agreement made as a compromise. These elements are omitted in the instruction. This instruction confuses right by mutual agreement upon a line, and right by adverse possesession, two different things, as the one is friendly growing out of agreement, the other hostile relation unconnected with agreement. Whilst such agreement must be executed at once by actual possession to the line, ten years occupancy is not required—only time enough to show intent. *Turner* v. *Baker*, 27 Am. R. p. 235. Without such agreement Neal could get title by adverse possession, if proven, and of a character to be adverse possession, and of sufficient continuous duration. Perhaps the defendant could not complain of this confusion. This instruction is however intended to say that such an agreement would do away with the effect of said verdict and judgment. It would not, if fully proven, for want of doubt and uncertainty as to the line. The decisions say that the only reason why such agreement can hold as not violating the statute of frauds is, that it does not originate or create a line, but simply ascertains its place amid doubt and uncertainty. But it was fixed free from doubt and

uncertainty, in the eye of the law, by that verdict and judgment. And to make such agreement binding it must be definitely agreed and very clearly proven. The evidence of Stout, the surveyor on whose survey the alleged agreed boundary line rests chiefly, says, without any evidence to contradict his statement, that he did run a line at Beckwith's request, and that Beckwith indicated to Paul Neal, son of Daniel R. Neal, the latter not there, his willingness to agree to the line, and they went to Parkersburg to execute an agreement, but Neal declined to execute the agreement, Paul saying they had changed their minds since they were on the ground the day before, and Beckwith declared that, "they will never get me to agree to that again". Here is no consummated agreement—a mere disposition to compromise. This was not ten years before suit. And Beckwith's executor went on the land in 1904 claiming it, recognizing no such agreement. "A party is not bound by any admission in an offer tending to a compromise, which was not accepted." *Williams* v. *Price*, 5 Munf. 507. On this unconsummated agreement an instruction giving it full force was based. It is said that Beckwith in surveying stopped short of the line claimed by his administrator in this suit. This was because distance gave out; but perhaps he did not know that calls for an ascertainable line or marked corner take precedence over mere distance. Beckwith never admitted that this line was the true Neal-Stokely line. Suppose he had; suppose he had even admitted that he did not own the disputed land. It would not take away his title or estop him from afterwards claiming it. When the statute of frauds requires a deed to pass title, it would be absurd to say that an unaccepted proposal, for compromise, or mere knowledge that one is cutting timber or sod on one's land, or claiming it, and he remains silent, or does not sue, or even concedes by words the right of his adversary, his title is gone. The law denies this. He may have done so for mere peace and freedom from annoyance. 2 Wigmore, Ev. section 1061. It is well settled that the true owner may change his mind, and assert his right. It is no estopple. What pay does the party get for his land? It is not proven that Beckwith ever induced Neal to act on his conduct or change his condition or spend money in faith of it. If Neal chose to act on it—and what loss did he incur by it

or outlay did he make?—it was his own risk. And had he not the same means of knowing where the jury had fixed the line as Beckwith? By no such oral admissions or conduct as shown in this case can a man lose his title, on ground of estopple or otherwise. *Suttle* v. *Railroad*, 76 Va. 284. In *High* v. *Pancake.* 42 W. Va. p. 607, we said "Mere oral declarations to destroy title are inadmissible, because parol disclaimers cannot affect a vested title in the face of the statute of frauds." The authorities there cited, and 3 Cyc. 725, 784, show this. And to make an agreed boundary, if not written, there must not only be a finished agreement, but it must be carried into execution by the parties by full actual possession to the line. *Gwynn* v. *Schwartz*, 32 W. Va. 487. And as the declaration in this case only claims to the Neal-Stokely line, the plaintiff can go no farther, even if there had been a valid agreement to fix a line.

The fourteenth assignment of error is, that the court instructed that if after judgment in said action of *Beckwith* v. *Thompson*, Neal was in actual possession by residence, inclosure, clearing, pasturing, sodding or cultivation of the land in controversy up to a line marked on the new plat, in this action under claim of title other than that adjudicated in said suit, the jury must find for the defendant. We do not say whether the evidence proves possession under · Neal. There is great question whether any foot of the land in controversy was in such occupation by residence, inclosure, cultivation or clearing as to give title by limitation. We do not decide in view of a new trial. I make such remark for this reason. The plaintiff gave evidence of occasional acts of cutting sod and timber and pasturing cows. Now, as cutting sod and pasturing cows which wandered from the Beckwith tract across the line for want of a fence were in evidence, the jury might have concluded that such pasturing, cutting sod and timber, in and of themselves, were adverse possession, whereas they are not. *Turpin* v. *Saunders*, 32 Grat. 27. When there is otherwise actual occupation they may go along helping to show actual possession. The defendant claimed that there was no residence on this land, no clearing, no continuous inclosure, and that such inclosure as there was went down, the rails carried away and burnt, and the inclosure lost. In view of this, the instruction should

have mentioned the occasional pasturage of cows, cutting sod and timber only in connection with other acts, residence and inclosure, not as of themselves constituting adverse possession. They are mentioned in the disjunctive; the instruction is that each of those occasional acts makes such possession. This is not the case. They do not shut out the owner. Mere claim of title and occasional act of trespass will not make adverse possession. They want continuity. *Wilson* v. *Braden*, 56 W. Va. 372; *Oney* v. *Clendenin*, 28 *Id*. 34. Instruction should be clear as applied to the evidence and claims in the case, not such as may mislead. *Parkersburg Indus. Co.* v. *Schultz*, 43 W. Va. 470.

The sixteenth assignment of error is, that the court refused to give defendant an instruction that if the verdict and judgment in the former action gave Beckwith the land in controversy they were conclusive against the plaintiff. The court gave it, but with a modification, "unless the jury believe that the plaintiff is entitled to recovery under other and different title and rights under color or claim of title as hereinbefore set forth in instructions for plaintiff." I think the instruction as offered was objectionable in not saying, unless Neal had, by possession since the judgment, got title; but how as to the modification? What are "the other and different title or rights under color or *claim* of title" on which plaintiff could recover? They are those specified in other instructions. Could a jury grope amid a maze of complicated instructions to get specification of such title or right? Is the Logan deed relied on for color? Where does it go? Surveying did not define it, and therefore possession of part under it would not be possession of the whole. As color is stopped at the old line as settled by the verdict, the declaration stops there also. Does it refer to right acquired by limitation? It imports possession, giving right to the whole, whereas the evidence of adverse possession, if any, presents the question of possession of part or all. I think the modification was vague and obscure.

The seventeenth assignment of error is, the refusal of an instruction that if the verdict in the former action fixed the line D–E as the Neal–Stokely line, then that line defined the extent of the boundary specified in the plaintiff's deed, and it did not constitute afterwards color of title to any land be-

yond said line, and that possession thereafter by plaintiff beyond said line would be adverse only to the extent of an actual and exclusive inclosure, and would not give plaintiff adverse possession to any land beyond that line "outside of his actual inclosure." The court changed the word, "inclosure", to "possession", and as thus modified gave the instruction. Here it is proper to repeat, that plaintiff showed no paper title; and further that his deed from Logan as mere color of title for adverse possession could not go over the line fixed by the verdict, because it fixed the Neal and Stokely line, and the deed is limited to it, does not pretend to go over it, and the declaration does not. No color of title, therefore, appears beyond that line, and hence any possession by Neal over it must be confined to actual occupation. Now, what could the substitution of the word "possession" for "inclosure" mean? There was evidence of occasional cutting sod and timber and pasturing cows wandering across the line for want of a fence, and of a poor fence standing a short time on a line, then destroyed by persons carrying off and burning the rails, leaving only a line of posts, as proven by plaintiff's witnesses. Perhaps it would mislead under the circumstances developed by the evidence, would be the argument against the modification. As stated above those things do not, in law, constitute "actual possession" under the statute. There was evidence claimed by the plaintiff to show cultivation of a field of three acres. It was a question whether it was on the land in dispute. That was not defined in bounds by plat or definite evidence, yet the recovery was of all the land. Even if it had been defined, and possession of it had been sufficient to hold it, this would give no right under the statute beyond its limit. But that evidence, on the theory that if there be any evidence tending to show the facts of an instruction justifies it, probably makes the instruction too narrow. It is true that many cases do say that where there is no color of title, but only *claim*, possession does not go beyond inclosure. *Core* v. *Faupel*, 24 W. Va. 238; *Parkersburg Indus. Co.* v. *Schultz*, 43 *Id.* 470; *Va. Midland* v. *Barber*, 97 Va. 118. But others use broader language. *Core* v. *Faupel*, 24 W. Va. 238, point 239. *Oney* v. *Clendenin*, 28 W. Va. 34, uses the words actual possession "by enclosing it under fence, or by clearing it, or in some other visible or notorious man-

ner." See *Swan* v. *Young*, 36 W. Va. 57; *Ewing* v. *Barnes*, 11 Peters 41; 1 Am. & Eng. Ency. L. (2d Ed.) 847; *Ellicott* v. *Pearl*, 10 Peters 412; Tyler on Eject. 892. Fencing is not necessary if there is cultivation or other sufficient act. 1 Am. & Eng. Ency. L. (2d Ed.) 827, 828. I think that if one cultivate a field for the period, with claim, it is enough. The word substituted is "possession", making the instruction read "actual possession." Various things make actual possession, and it may be said this change does not clarify, but is bad because it does not define what makes it. It has a meaning, however. If the instruction had gone on to define it, and defined it wrong, it would be error; but I cannot say that the change merely is error. A party has right to an instruction, if good, in his own words; but I think the word "inclosure" made the instruction too narrow, under the theories presented by the case, and I do not see that the change is bad. But it is proper to say that this instruction cannot be applied to make occasional cutting of sod or timber, pasturing cows, or a fence once built, but suffered to go to decay, or destroyed by persons stealing and burning its rails, leaving nothing but a line of posts, thus breaking the continuity of possession, sufficient to show adverse possession. *Oney* v. *Clendenin*, 28 W. Va. 34, 1 Am. & Eng. Ency. L., (2d Ed.) 827–8; 1 Cyc. 990. I remark that where the word "inclosure" was used in the Parkersburg Industrial case we were discussing the efficiency of the fence as an inclosure. And it is prudent to say, lest this instruction mislead on another trial, that the plaintiff shows no paper title; and further that his deed from Logan, as mere color of title for adverse possession, could not go over the line fixed by the verdict, because that fixed the Neal–Stokely line and Logan's deed is limited to that line, and also the declaration in the present case claims to go no farther. No color of title appearing beyond that line, Neal could go no further than actual occupation by inclosure, cultivation, residence, clearing or other open, notorious manifestation of hostile possession, according to the nature of the case. It could not go to the extent of the controverted land, though Neal *claimed* it all. *Heavner* v. *Morgan*, 41 W. Va. 428. The rule that possession of part is possession of the whole does not apply where there is no *color*, but only *claim* of title. There is no whole in such case, as there is no writing to call for or bound such whole.

The eighteenth assignment of error is, refusal of an instruction of defendant that Beckwith's possession of any part of the land within the boundary defined in the verdict map, would, after the affirmance of the judgment in the former action, give Beckwith possession of the whole up to the limits of said boundary, "except such parts thereof as may have been in the actual adverse possession of the plaintiff by inclosure sufficient to exclude Beckwith therefrom." The court struck out the words "by an inclosure", and inserted before the word "possession" the words "right of." Here the old rule of possession of part is possession of the whole applies. If Beckwith had possession of any part of the land he recovered, he had possession of all, not mere dry right of possession, because that judgment gave him title to what he recovered. Indeed, if he had possession anywhere in his tract, his recovery would give him possession of all the land recovered as part of his tract. Where the use of inserting the words, so as to say he had no possession, but only right of possession?

The nineteenth assignment of error is, the refusal of an instruction. The court struck out "inclosure", substituted possession, so it read "actual possession." As stated above we see no error in this. It is above discussed.

The twentieth assignment of error is, the refusal of an instruction asked by defendant, that to justify the jury in *inferring* an oral agreement establishing an agreed line, in absence of evidence of an actual oral agreement, there must be clear evidence of acquiescence by the parties against whom it is claimed in the actual possession for ten years up to the well defined line, and in the continuous cultivation by the adjoining land owner for ten years up to the line, if the land is capable of cultivation, or if in woods, by the adjoining owner who established such line, with knowledge of the owner against whom it is claimed, always clearing up to the line, and with his knowledge cutting timber and permitting other acts of visible ownership for ten years up to such line, and that the period of ten years must have a definite beginning, and such acts must be continuous and uninterrupted for ten years. This instruction does not refer to a line made by *express* agreement, but to a line claimed to be established by

acquiescence. A man's land is to be lost to him by mere silence, indisposition to sue, neglect. The statute of limitations demands ten years of hostile, open, notorious, continuous, exclusive possession, with claim of title. Why should the rule be otherwise where silence is to take away title? Should mere acquiescence convey title in less time or with less essentials than the statute? It is said that by this instruction the party is put to the burden of proving beginning of possession. Why not? He has to do so under the statute of limitations. The authorities show that this instruction ought to have been given. It was peculiarly proper to present the defendant's theory under evidence relied on by the plaintiff for acquiescence. To make a binding line by acquiescence it must be for statute period. 4 Am. & Eng. Ency L. (2d Ed.) 863. *Gwynn* v. *Schwartz*, 32 W. Va. 487, and 5 Cyc. 942, will sustain this view. See *Adams* v. *Rockwell*, 16 Wend. 285. I fail to discern any line of difference between acquisition by one man of another's land by what is called "practical location", that is, by acquiescence, and acquisition by adverse possession by the statute of limitations. The line of difference is shadowy. There must be in both possession for the statute period with certain beginning. That must be actual. Can it be by signs less signal than the statute requires? Must not this claim of line by acquiescence come up to the measure demanded by the statute of limitations?

The twenty-first assignment of error is, the rejection of evidence of Bailey tending to prove possession of Beckwith of his tract. It is stated that he was "understood" to be a a grandson of Beckwith. It was not shown that his mother was dead. He might never be interested in his grandfather's estate. He was only heir apparent. *Nemo est haeres viventis.* And his evidence did not prove a *personal* transaction between him and his grandfather, even if that would exclude. But he was not giving evidence against Neal's administrator of a personal transaction with Neal. Why not competent?

Judgment reversed.

*Reversed.*