McCORMICK et al. v. PROVIDENT LIFE & TRUST CO. OF PHILADELPHIA et al.

(Circuit Court of Appeals, Fourth Circuit. January 25, 1918.)

No. 1549.

1. WILLS ⬅️681(2)—TESTAMENTARY TRUST—POWERS OF TRUSTEES.
Under a will by which the testator devised and bequeathed his residuary estate in trust, with power in the trustees to continue to hold the property, or to sell any of it and reinvest the proceeds, the trustees took a legal title to the real estate, which will support an action of ejectment.

2. EJECTMENT ⬅️88, 93—TRIAL—FINDINGS BY COURT.
Rulings on the admissibility of evidence and findings of the court on the trial of an action of ejectment without a jury affirmed.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Chas. A. Woods, Judge.

Ejectment action by the Provident Life & Trust Company of Philadelphia and Edward R. Wood, Jr., executors and trustees of Stuart Wood, deceased, against David McCormick, the United Fuel Gas Company, Rebecca C. Davis, Henrietta Daingerfield, and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

George J. McComas, of Huntington, W. Va. (Enslow, Fitzpatrick & Baker, of Huntington, W. Va., on the brief), for plaintiffs in error.

C. W. Campbell, of Huntington, W. Va. (Campbell, Brown & Davis, of Huntington, W. Va., on the brief), for defendants in error.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

PRITCHARD, Circuit Judge. This is an action in ejectment instituted in the District Court of the United States for the Southern District of West Virginia to recover a certain tract of land situated in the county of Mingo, state of West Virginia. By stipulation of counsel a jury trial was waived and the case was heard before Woods, Circuit Judge, sitting in the District Court. The court found in favor of the plaintiffs, and judgment was entered accordingly, to which the defendant excepted, and the case comes here on writ of error.

[1] There are eleven assignments of error, eight of which relate to the conclusions of law reached by the court below upon the testimony. Three of the assignments, to wit, the eighth, ninth, and tenth, pertain to the ruling of the court in holding that certain documents were admissible. The eighth assignment is to the effect that:

"The court erred in allowing the introduction as Exhibit 9 of the last will and testament of Stuart Woods over the petition of the defendants."

The defendants insist that the will of Stuart Wood does—

"not confer power on the plaintiffs to bring this or any other suit. This property would go to the heirs as named in the will, unless disposed of in some of the ways specifically set forth in the said will."

After disposing of certain articles of personal property the following provision is contained in the will:

"All the residue of my estate I bequeath to my said trustees, viz., the Provident Life & Trust Company, Edward R. Wood, Jr., in trust, however, for the purposes following."

The will then, among other things, provides:

"That the trustees may, in their discretion, continue to hold any property, real or personal, that I own, and may dispose of the same to the best advantage and reinvest the proceeds. * * * *"

These words empower the trustees, not only to develop the property, but also give them unqualified power in their discretion to sell and convey the same and reinvest the proceeds. The will of the testator was duly probated in Philadelphia, Pa., where he resided at his death; a copy of the same containing the probate being recorded in the clerk's office for the county of Mingo, W. Va., in accordance

with the provisions of section 35, chapter 77, of the Code of that state. Thus it will be seen that by virtue of the will the legal title to the property in question became vested in the executors and trustees, with the right and authority, as we have stated, of selling and disposing of the same. Under these circumstances, we think the ruling of the lower court was eminently proper.

The ninth assignment of error provides that:

"The court erred in holding that under the said exhibit and the said will the Provident Life & Trust Company could maintain this suit."

In view of what we have said as respects the eighth assignment of error, we feel that it is not necessary to enter into a discussion of the question sought to be raised by this assignment.

[2] By the tenth assignment of error it is contended that:

"The court erred in allowing the introduction of what is known and described as Plaintiffs' Exhibit No. 10.

Defendants, among other things, introduced Exhibits Nos. 22 and 23. Exhibit No. 22 contains a list of real estate sold in March, 1886, for the nonpayment of taxes for 1883 and 1884, and purchased by the state. Among other tracts of land this list contains the 135 acres in controversy. Exhibit No. 23 purports to be a copy of the land book by which it is shown that the tract consisting of 135 acres was assessed to George R. C. Floyd for the year 1884. Defendant also introduced Exhibit No. 24 containing the certificate of the clerk of the circuit court of Logan county showing that the assessment book for the year 1883 was lost. Nothing else appearing, this would put the legal title in the state of West Virginia. However, under the law in force in West Virginia in 1887 the former owner, and his heirs or assigns, are permitted to redeem his lands from the forfeiture and thus reinvest himself with the title. Chapter 105, Code of West Virginia. Plaintiffs' Exhibit No. 10, the introduction of which was objected to by the defendant, shows that on the 12th day of October, 1887, when the special commissioner made the deed for the 135 acres to John F. Keator, that the latter applied to the clerk of the circuit court of Logan county and upon such application a decree was entered permitting Keator to redeem the 135 acres of land, along with numerous other tracts. We think the ruling of the court below in permitting the introduction of this exhibit as a link in the chain of plaintiffs' title was correct.

The learned judge who heard this case filed an opinion, in which he found certain facts relating to the plaintiffs' chain of title and right to recover. The opinion is as follows:

"In this action of ejectment a jury trial was waived and the cause was submitted to me for determination. The plaintiff made out a complete chain of title to the tract of land of 135 acres described in the declaration, commencing with a grant from the state of Virginia to William Paisley dated February 1, 1854. Paisley conveyed to George R. C. Floyd and John W. Johnson August 9, 1855, and Johnson conveyed his interest to Floyd December 5, 1855. The creditors of Floyd instituted proceedings in the state court to subject his land to the payment of debts, and on October 12, 1887, J. C. Bing and H. C. Ragland, special commissioners, conveyed to John F. Keator. Keator con-

veyed to Stuart Wood March 23, 1888. Wood devised the land to the plaintiffs in trust by his will dated March 3, 1914.

"The defendants set up three defenses by which they undertake to break into the plaintiffs' title:

"(1) A sale for delinquent taxes for the years 1883 and 1884, and purchase by the state.

"This defense seems to be sufficiently disposed of by the showing on the part of the plaintiffs that on October 12, 1887, Keator redeemed the land from the state.

"(2) Adverse possession under color of title, consisting of numerous conveyances made at different times to defendants and those under whom they claim.

"Some of these colors of title seem to embrace the 135-acre tract here involved, but the acts of possession relied on were not on the tract in dispute. Under the well-known principle, therefore, they could not affect the superior legal title.

"(3) In 1870 George R. C. Floyd, under whom plaintiffs claim, instituted a suit in a court of chancery against James Step and A. S. Gray for the purpose of enforcing specific performance of a contract to convey to him certain lands described in the bill. In 1882 a decree was made in this cause, adjudging Floyd to be entitled to the relief asked and directing William Straton, a commissioner of the court, to convey the land to him; the defendants being nonresidents. Straton executed the conveyance on May 24, 1882, and there is little doubt but what he undertook to embrace in the conveyance the 135-acre tract here in dispute. Subsequently in the same cause, on the 6th of February, 1882, Floyd was enjoined from 'selling, disposing of, or in any way incumbering the real estate mentioned in his bill or his amended bill and conveyed to him by Special Commissioner William Straton, under a decree in this case until further order of this court.' On the 14th of April, 1887, a decree was made in which the following recital appears: 'And it appearing to the court that under a contract of November 8, 1865, mentioned in said amended answer and special replication, that the plaintiff, George R. C. Floyd, is entitled to one-fourth of the tract of land named therein in the plaintiff's bill, and the heirs of A. S. Gray, deceased, are entitled to three-fourths of said land, to-wit, the Burning Spring tract bought by A. S. Gray of James Step and about 15 acres bought by said Gray of Isaac Brewer, and that title to said land is still in said James Step, party defendant to this suit, excepting as to the 15 acres, and the title to the 15 acres is in the heirs of the said Gray, party defendant hereto; and it further appearing to the court that the land should be partitioned between the owners of the land as aforesaid.' The decree proceeds to direct a partition.

"The position is taken by the defendant that this decree embraces the tract in dispute. If that be so, then at most the plaintiffs can recover only the one-fourth interest, since the title which their grantor derived from Floyd was not acquired until August, 1887, after this decree of the court in April. The plaintiffs having shown a perfect title in Floyd from the state, when the defendant asserts that a court of equity adjudged him to be entitled to only one-fourth interest, they assume the burden of showing that the court incorporated such a mistake in its decree by clear and satisfactory evidence. As I construe the proceedings in the equity case of Floyd v. Gray, Straton did undertake to embrace the tract of 135 acres in his conveyance, and had it surveyed as part of the land; but this conveyance was never confirmed, and it did not estop Floyd from holding the entire fee under his title previously acquired from an entirely independent source. The deed did not have the effect of conveying anything which the court did not authorize the commissioner to convey, and it was a nullity in so far as it went beyond the authority conferred on the commissioner, which was to convey the land described in the bill. Ronk v. Higgenbotham, 54 W. Va. 137, 46 S. E. 128. It is true the court in the order of September 6, 1882, does enjoin Floyd from disposing of the land conveyed to him by Special Commissioner Straton 'under a decree in this cause.' But even this could not have had the effect of enjoining Floyd from conveying land which he acquired otherwise, and which Straton

had no authority from the court to convey. The language used by the court in its decree of April 14, 1887, in describing the land in which it held that Floyd had only one-fourth interest, as the Burning Springs tract 'bought by A. S. Gray of James Step,' seems to exclude the 135-acre tract. There is no evidence that that tract was ever bought by A. S. Gray of James Step, or that James Step ever owned it.

"There are other considerations supporting the conclusion that the court was not dealing with the 135 acres when it adjudged that Floyd was entitled to only one-fourth interest. In this very confusing record there are also some considerations leading to the opposite conclusion. On the whole, according to the decided preponderance of evidence, I am of the opinion that the tract of 135 acres here in dispute was not embraced in the land in which the court decreed that George R. C. Floyd had only one-fourth interest. My conclusion is that the plaintiff is entitled to recover the land in dispute, having established a complete legal title thereto."

It is well settled that findings of fact by the court below will not be disturbed where the evidence is conflicting. In this instance we think the evidence is such as to establish beyond controversy the state of facts found by the court below. We are likewise of opinion that the conclusions of law as reached by the court below were proper and in harmony with the authorities; but inasmuch as we have quoted the opinion of the court below in full, which disposes of these points, as we think, properly, we do not deem it necessary to cite any additional authorities in support thereof, nor to enter into a discussion of the same further than to say that we think that the judgment of the lower court is proper and should be

Affirmed.