CORA S. STERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PHILIP L. SEASONGOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16692, 18862. Promulgated November 27, 1928.

*Lester A. Jaffe, Esq.*, for the petitioners.
*Harry LeRoy Jones, Esq.*, for the respondent.

454

VAN FOSSAN: In these proceedings each of the petitioners seeks to deduct from gross income a proportionate part of losses alleged to have been sustained in the taxable year on two pieces of real property. It is contended that each petitioner was the absolute, legal and equitable, owner of a three-fortieths interest in both properties during the taxable year and at the time of the losses, such interests, it is claimed, having been acquired in the preceding year under the wills of Lewis Seasongood, deceased, and Emma Seasongood, deceased, father and mother, respectively, of the petitioners. The properties in question were originally owned jointly or in common by Lewis Seasongood and Jacob Seasongood, father of Emma Seasongood, and such interest as Emma Seasongood had came to her under the will of her father. The respondent refused to allow the deductions upon the ground that both properties were still held in trust under the wills of the original owners during the taxable year and at the time of the losses, and that any losses sustained are deductible by the estates and not by the individual beneficiaries thereof.

The controlling question before us is whether or not the trusts created as to these properties by the wills of Jacob, Lewis and Emma Seasongood had terminated at or before the taxable year, and the legal title, as well as the equitable and beneficial title, of the petitioners to their respective interests in the properties had vested in possession at that time and at the dates of the losses. If the trusts had not terminated on or before the dates of the losses, and if the legal title to these properties at that time was still held by the trustees, or in trust by the executors, of the estates jointly or in common, and had not then, or prior thereto, vested in the petitioners and other beneficiaries, any losses sustained on the properties can not be deducted in any amount by the petitioners from their individual gross incomes. In the latter event such losses are deductible, if at all, by the respective estates in their proper proportion in computing the net income of the estates, and are not deductible by the petitioners, in proportionate shares, as beneficiaries of the estates. See section 219 (b) of the Revenue Act of 1918; *Louise P. V. Whitcomb et al.*, 4 B. T. A. 80; affd. D. C. App., 25 Fed. (2d) 528; *Arthur H. Fleming, et al.*, 6 B. T. A. 900; *George D. Widener, et al.*, 8 B. T. A. 651; and *Baltzell v. Mitchell*, 3 Fed. (2d) 428.

That Jacob, Lewis, and Emma Seasongood devised their respective interests in the properties in trust is not questioned nor is the validity of the several trusts attacked. The petitioners contend that

the trusts had terminated and absolute title to their respective shares in these properties had vested in them at or before the time the alleged losses were sustained. It becomes necessary, therefore, to examine the wills of these testators and the applicable law to determine the title or estate vested in their trustees, the duration of the trust, and the nature of the estate in these properties held by petitioners.

The title or estate acquired by trustees in trust property is fixed by the requirements of the trust (see *Young* v. *Bradley*, 101 U. S. 782–787) and is coextensive with the powers conferred and the duties imposed. If a legal estate in fee be necessary to the proper execution of the trust, as where the trustee is empowered to sell property and reinvest the proceeds or income, or is directed to distribute and convey the property to the beneficiaries, such an estate will vest in the trustee. See *McCormick* v. *Provident*, etc. *Ins. Co.*, 249 Fed. 141. The legal title having vested in the trustee, it can not be divested without a conveyance by him or by order of court. *McArthur* v. *Scott*, 113 U. S. 340. Generally, in the absence of a provision in the will or other instrument requiring the trustee to convey the legal title will vest by operation of law in the beneficiaries immediately upon the termination of the trust. The trust will not terminate, however, until the expiration of the time limited for its duration and the purposes of the trust have been performed or have failed. In some cases where the trust has been completely executed, it may be terminated prior to the expiration of the time prescribed for its existence by order of court or by agreement between all parties beneficially interested.

The direction in a will that the trustee shall divide, distribute and convey trust property to the beneficiaries upon the expiration of the trust period is an imperative duty of the trustee and an express purpose of the trust, just as the instruction to pay the income of the estate to designated persons and to pay annuities are duties and purposes of the trust. See *Fitchie* v. *Brown*, 211 U. S. 321. This duty is one imposed upon the trustee and is to be discharged by him in the exercise of powers conferred by the will. In such cases, the trust will continue and the legal title will remain in the trustee until he divides, distributes and conveys the estate to the beneficiaries, notwithstanding the will directs that the division, distribution and conveyance be made at or within a certain time. So long as the trust continues and the legal title remains in the trustee, the beneficiaries of the estate have only an equitable title or interest therein. They can have no legal title, or right of possession, to any specific part of the trust property, real or personal. *Potter* v. *Couch*, 141 U. S. 296. See also *McArthur* v. *Scott, supra*.

Although the duty of a trustee to convey the estate to the beneficiaries arises when the trust has terminated either by the expiration of time and the complete execution of the purposes thereof, or by the happening of the contingency upon which the conveyance is to be made, a conveyance will be presumed only in the absence of evidence to the contrary. And where it appears as a fact that no conveyance of the estate was ever made by the trustee, the legal title remains in him. See *Lincoln* v. *French*, 105 U. S. 614–616. A valid trust once established is presumed to continue and the burden of proof is upon him who denies that it longer exists. See *Seymour* v. *Freer*, 8 Wall. 202.

Jacob Seasongood devised and bequeathed his residuary estate to executors in trust for five of his children, of whom Emma Seasongood was one, until such time as it might become necessary, or his executors should deem it most practicable and advisable to make partition of the same, the income therefrom to be paid in equal shares to said five children. He further directed that "should partition of my Estate be made as provided for, then and in that case, * * * the same (shall) be made by the mutual consent of my said executors, and without the intervention of any court." To that end he authorized the executors, in their discretion, to sell and dispose of any of his estate, real or personal, and to purchase the interest of any person or persons with whom he might own realty in common. He further provided that the real estate owned jointly with Lewis Seasongood, "whenever it becomes necessary or advisable to make partition of the same," should be appraised and that said Lewis should have the privilege of purchasing the testator's half interest at the appraised value.

Jacob Seasongood's one-half interest in these properties thus passed to his executors and legal title thereto vested in them, in trust for the five children named. The duration of the trust is not definitely fixed, but it was to continue until it became necessary, or the executors deemed it most practicable and advisable, to make partition of the estate.

The record is silent as to the administration, partition and distribution of Jacob Seasongood's residuary estate. It does not appear when, if at all, partition was made, or that partition at any time became necessary or was deemed by the executors most practicable and advisable. It does appear, however, that the real estate owned jointly with Lewis Seasongood was not appraised, as directed, and said Lewis did not exercise his privilege of purchasing Jacob's half interest. Furthermore, Jacob's estate filed fiduciary returns for the years 1920 and 1921 upon which income from the properties in question was reported and the distribution of income to beneficiaries was set forth. Upon the return for 1920 the estate claimed deductions

for one-half the losses alleged to have been sustained on each of the two properties.

The evidence does not establish that the trust created by Jacob Seasongood, which included his interest in these properties, was terminated during or prior to the taxable year. It appears that legal title to his property included in the trust at that time remained in his trustees or executors. Accordingly, Emma Seasongood acquired no legal title or estate in these properties under her father's will and could pass no such title by her will to the petitioners. It seems unnecessary, therefore, to review at length the provisions of Emma Seasongood's will. We may observe, however, that she also devised her residuary estate, including such interest as she had in these properties, in trust, and that no evidence has been introduced to show that this trust was terminated during or prior to the taxable year. On the contrary, the fact that her estate filed a fiduciary return for 1921 and reported thereon income received from the estate of Jacob Seasongood seems to indicate that the trust created by her had not been terminated prior to that year.

Lewis Seasongood devised and bequeathed his one-half interest in these properties in trust for his children, of whom the petitioners are two. The trust was to continue for five years following his decease or until the death of the last survivor of his two sons named in the will, whichever should happen first, with the option or discretion in the trustees, if either son should survive the five-year period, to extend the trust to seven years or to the death of the last survivor of his two sons, whichever should happen first. The five-year period expired in November, 1919, and at that time one of the sons, Philip L. Seasongood, was living and is now living. It does not appear whether or not the other son, Clifford Seasongood, survived the five-year period. The trustees were directed to pay the income of the estate to the children in equal shares and at the time of final distribution, to apportion, transfer and convey to each child his or her equal share of the estate. The trustees were empowered and authorized to sell or dispose of any of the estate, real or personal, and in their discretion to purchase any property, including the interests held jointly or in common with other persons. The testator expressly directed that the real property owned in common or jointly with Jacob Seasongood, his estate or heirs, be divided, partitioned or otherwise disposed of as soon as practicable after his death, so that the interest of each might be separated. To that end he authorized his executors and trustees to make any and all sales, conveyances and purchases and to perform any and all acts necessary for the purpose.

The legal title to Lewis Seasongood's half interest in these properties was thus vested in the trustees and remained in them until they

should partition, distribute and convey the same to the beneficiaries, as directed in the will, or the trust was otherwise properly terminated. The direction to partition and convey was a duty imposed upon the trustees and the specific direction to partition, divide or otherwise dispose of real property owned jointly with Jacob Seasongood was a mandatory duty imposed upon the executors and trustees, the performance of which was essential to divesting them of the legal title to the testator's interest therein.

The evidence does not establish that there was a termination of the trust in these properties created by Lewis Seasongood at any time during or prior to the taxable year. The only evidence indicative of a termination of the Lewis Seasongood trust is the application of the trustees to the probate court for authority to distribute, and an order of the court in December, 1919, authorizing the distribution of certain securities held by them, but it does not appear definitely when the securities were actually distributed to the beneficiaries pursuant to that order. Nor is that alone sufficient to establish that the trust was terminated as to all the property held in trust. It may well be, where real and personal property are held in trust, that the trust has been terminated as to the personal property and continued as to the real property. See *Herron* v. *Comstock*, 139 Fed. 370. No evidence whatever was offered to show that the real property, which included testator's interest in the properties here in question, was ever partitioned and distributed, or that the trust as to such property was ever terminated in any manner. The properties in question were not partitioned, or otherwise disposed of by the trustees, as expressly directed by the testator in Item XXII of his will, at any time prior to the taxable year. No conveyance of these properties, or proportionate shares therein, has been made at any time by the trustees to the petitioners and other beneficiaries. It is also noted that Lewis Seasongood's estate filed a fiduciary return for 1921, a fact inconsistent with a termination of the trust and a distribution of the estate to the beneficiaries severally. On the evidence before us, it can not be said that the trust created by Lewis Seasongood had been terminated at or prior to the time of the alleged losses. So far as the record discloses, the legal title to his interest in these properties remained in the trustees.

The petitioners claim that in the taxable year and prior thereto they each hold the vested legal, as well as equitable, title to a three-fortieths interest in both properties in question. To sustain their contention, the burden is upon them to prove that the trusts created by Lewis, Jacob and Emma Seasongood had been terminated and the legal title to these properties had vested in the beneficiaries at that time. This they have failed to do. Whether or not, by proper proceeding in a court equity, the trusts could have been terminated and

the trustees compelled to convey these properties to the petitioners and other beneficiaries is a question not presented to us (see *Potter v. Couch, supra*), and upon which we make no comment. Upon the record before us we hold that the properties in question were held in trust during the taxable year and that the petitioners did not have legal title to any interest therein at that time. See *George M. Studebaker et al.*, 2 B. T. A. 1020.

Accordingly, any loss sustained upon the sale of the Central Avenue property and any loss sustained from the fire on the Second Street property, are deductions allowable, if at all, to the estates of Jacob Seasongood and Lewis Seasongood in their proper proportions, and such losses are not allowable deductions to the petitioners, beneficiaries of the estates, to any extent. The respondent, therefore, did not err in refusing to allow the deductions to the petitioners.

Our conclusions render unnecessary any determination of whether or not the alleged losses were sustained in the taxable year or of the amount of such losses.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

PHILLIPS concurs in the result.